IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | | |
|---|---|---|
| MANUEL ACOSTA, et al.<br>on behalf of themselves and all other similarly<br>situated individuals, | : | |
| | : | |
| Plaintiffs, | : | Case No. 8:08-cv-0086-JFB-TDT |
| | : | |
| v. | : | |
| | : | **CLASS ACTION** |
| TYSON FOODS, INC. | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR RULE 23 CLASS CERTIFICATION**

**I.      INTRODUCTION**

Plaintiffs Manuel Acosta, et al., by and through their undersigned attorneys,

move pursuant to Fed. R. Civ. P. 23, seeking certification of this civil action as a Class

Action. The class Plaintiffs request to be certified is defined as follows:

> All current and former employees of Defendant Tyson's
> Madison, Nebraska meat processing facility who have been
> employed by Tyson at any time from March 1, 2004[1] to the
> present, and who are or were paid under a "gang time"
> compensation system in the Kill, Cut, or Converting
> departments.

Most of the important facts that support class certification are not contested in this

litigation.

---

[1] This date is four years preceding the filing of the Acosta action and incorporates the
four-year statute of limitation of the Nebraska Wage Payment and Collection Act, R.R.S.
Neb. §§ 48-1228-1232. Commencement of a class action suspends the applicable statute
of limitations as to all asserted members of the class who would have been parties had the
suit been permitted to continue as a class action. American Pipe and Construction Co. v.
Utah, 414 U.S. 538 (1974).

While Tyson will undoubtedly contest certain legal aspects of Plaintiff's Motion For Class Certification, Tyson will be hard pressed to challenge many aspects of Rule 23 certification from a factual standpoint. There should also be little, if any, factual dispute as to other aspects of whether this matter is suitable for class action treatment. For example, Defendant Tyson should concede numerosity in this matter. In its corporate deposition Tyson testified that there are approximately 970 hourly employees at Tyson's Madison, Nebraska facility.[2] Moreover, given this large number of potential claims, Tyson would have a difficult time contesting factually whether a class action would be superior to hundreds or even thousands of potential individual lawsuits over the same issue.

Tyson also admits that they use a "gang-time" system of pay that affects almost all of the hourly production workers. Unless they perform "set up" or "tear down" work, which Tyson deponent Mary Unger estimated to be 30 of the hourly workers total, all other hourly workers in the Kill, Cut and Conversion departments (more than 800 hourly workers) are paid on a gang time basis. Accordingly, based upon those facts and the legal arguments set forth below, this Court should certify a Rule 23 class in this matter.

## II.   FACTS AND PROCEDURAL HISTORY

Plaintiffs initiated this class action on February 29, 2008, by filing their original class action complaint. The Complaint asserts that the same underlying facts -- that Defendant Tyson does not pay or fully pay production and support employees at its Madison meat processing facility for time spent at work donning, doffing and cleaning personal protective equipment – apply to all class members and form the basis for

---

[2]   See Deposition of Mary Unger at p. 8, attached hereto as **Exhibit "A."**

Plaintiffs' state law class claims, which are Plaintiffs' claims for violation of the Nebraska Wage Payment and Collection Act, R.R.S. Neb. §§ 48-1228-1232 and the Nebraska Wage And Hour Act, R.R.S. Neb. . §§ 48-1201-1209. See Plaintiffs' Complaint (**Doc. 1) at ¶¶** 13-22.

From at least March 1, 2004 through the present time ("the Class Period"), Defendant Tyson's Madison, Nebraska meat processing facility has utilized a uniform "gang time" timekeeping system that fails to pay production workers for all time worked. This system fails to pay the production and support workers for all time spent donning, doffing, and cleaning their personal protective equipment, and related activities, before and after shifts on the production line and during unpaid break times. See Plaintiffs' Complaint (**Doc. 1)** at ¶¶ 23-36.

"Gang time" is the time that processing lines are moving and during which production workers are physically at the assembly line while the lines are moving and producing product. See Plaintiffs' Complaint (**Doc. 1)** at ¶¶ 23-36. See also, Deposition of Mary Unger (Personnel Manager for Madison plant)(attached hereto as **Plaintiffs' Exhibit "A"**) at p. 10-12.[3] "Gang time" uniformly does not record time that production workers spend donning, doffing, and cleaning themselves and their personal protective equipment before and after line time and at unpaid meal breaks. See Plaintiffs' Complaint (**Doc. 1)** at ¶¶ 23-36; Deposition of Mary Unger (**Exhibit "A"**) at p. 17-19 (employees received separate uniform payment for pre- and post-shift time that is not

---

[3]   Tyson's Plant Controller at the Madison plant, William O'Connor, had the same understanding regarding gang time and defined it as: "I guess it would be the – you pick a position on the individual line, and the first piece of meat that hits it, the time that it takes from that until - - the time that it takes for the last piece of meat to hit the same position less breaks.   See, Deposition of William O'Connor (attached hereto as **Plaintiffs' Exhibit "B"**) at p. 3.

3

included in gang time).

Defendant Tyson readily concedes that they have a uniform "gang-time" system

of pay, which pertains to most of the hourly production workforce at their Madison,

Nebraska. For example, in Tyson's "Answer And Affirmative Defenses" (**Doc. 10**) at ¶

24, Tyson admits that many of the hourly production workers at the Madison facility are

paid on "gang time," plus "extra minutes" per day for pre- and post-shift activities. This

admission that its production employees are paid on a "gang-time" system has also been

made in the deposition testimony of Tyson corporate representatives who testified that at

the Madison facility, almost all employees in the kill, cut and conversion departments

(with the exception of an estimated 30 hourly employees[4] who perform "set up" or "tear

down" work) were paid using the gang time system. See, Deposition of Mary Unger

(**Plaintiffs' Exhibit "A"**) at p. 11-17. Mary Unger, Tyson's Personnel Manager for the

Madison plant, estimated that kill, cut and conversion comprised 851 of the

approximately 970 hourly production employees at the Madison plant.[5] See, Unger

Deposition (**Exhibit "A"**) at p. 9. Tyson witness William O'Connor also corroborated

that the kill, cut and conversion departments were paid using the gang time system. See,

O'Connor Deposition (**Exhibit "B"**) at p. 5.

Unger defined gang-time as "its when production starts to when production ends."

See, Unger Deposition (**Exhibit "A"**) at p. 10. Unger also testified that "gang time" was

significant in terms of how Madison production employees are paid because: "A lot of

---

[4] If these 30 hourly employees are not paid according to gang time they would be
excluded from the class definition.

[5] Tyson also conceded in its Answer (**Doc. 10**) at ¶ 25), that "most" of its employees at
the Madison facility use knives and some of the protective clothing is designed to protect
them from injury.

4

them are paid by gang. From the time that the – they get their first piece of meat to the time that they're done with that piece of meat, the last piece of meat." Id. at p. 11.

Accordingly, for purposes of this Motion For Rule 23 Class Certification, this Court should consider it to be uncontested that Defendant Tyson operates the Madison, Nebraska plant with a uniform "gang-time" pay system that affects most of the hourly production workers at the Madison facility.

Plaintiffs' Complaint alleges that this "gang-time" system violates Nebraska state law because it fails to fully pay workers for several pre- and post-shift activities such as donning, doffing and cleaning personal protective equipment and related walk-time that occurs before and after accomplishing these activities. See Plaintiffs' Complaint (**Doc. 1**) at ¶¶ 22-35. While Tyson may dispute the Plaintiffs' claims that Tyson's "gang-time" system is illegal under Nebraska law, Tyson cannot dispute that its uniform pay practices render this matter naturally suitable for class action treatment under Federal Rules of Civil Procedure 23. Therefore, for the reasons set forth in the Argument section of this Memorandum, this Court should certify this matter as a class action pursuant to both Rule 23(b)(1) and (b)(3).

## III.   ARGUMENT

### A.   This Court Should Follow Its Prior Decisions In Lopez v. Tyson Foods And Morales v. Greater Omaha Packing Which Addressed Precisely The Same Factual and Legal Issues That Are Presented Here.

In Lopez v. Tyson Foods, 2008 WL 3485289 (D. Neb. 2008), this Court certified a Rule 23 class for plaintiffs' Nebraska state law claims that involved Tyson Foods using the same gang time practices at its beef processing plant in Lexington, Nebraska that Tyson has used at its Madison, Nebraska pork processing facility. The Lopez plaintiffs'

claims are identical to the claims of the Plaintiffs here in the following respects: (1) both cases involve claims brought pursuant to the same Nebraska state law statutes; (2) both cases involve Tyson's utilization of a "gang time" system where employees are not paid individually pursuant to a punch-clock system but rather are paid only for work performed while the processing line is moving; and (3) both cases involve claims for unpaid time for donning, doffing, sanitizing and maintaining personal protective equipment (PPE) and walking time associated with those tasks.

More recently, in Morales v. Greater Omaha Packing Co., Inc., 266 F.R.D. 294 (D. Neb. 2010), this Court also certified a Rule 23 class action involving a Greater Omaha Packing beef packing facility which employed very similar "gang time" practices to those employed by Tyson at the Madison plant here. This Court held in Morales: "As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendant because the core issue and arguments of each putative class member is the same. A class action is a superior method of resolution of issues compared to individual litigation or separate litigation of the state law claims." Morales, 266 F.R.D. at 305.

Rule 23 class certification here is also supported by the Northern District of Iowa's decision in Bouaphakeo v. Tyson Foods, Inc., 560 F.Supp.2d 870 (N.D. Iowa 2008). In Bouaphakeo, the Northern District of Iowa court evaluated the plaintiffs' motion seeking Rule 23 class certification at a different Tyson plant, in Storm Lake, Iowa, that involved Iowa state law claims similar to the Nebraska state law claims that were involved in Lopez and Morales and are involved again here. Judge Bennett undertook a very specific analysis of plaintiff's state law claims and undertook a

thorough analysis of all of the Rule 23 class requirements.  After reviewing all of the Rule 23 requirements, the <u>Bouaphakeo</u> court concluded: "Based on the above analysis, the court finds that Plaintiffs' motion for class certification under Rule 23 should be granted as modified.  That is, the court hereby certifies in accordance with Rule 23(b)(1)(B) the following class under Rule 23(b)(3): 'All current and former employees of Tyson's Storm Lake, Iowa processing facility who have been employed at any time from February 7, 2005 to the present, and who are or were paid under a "gang time" compensation system in the Kill, Cut, or Retrim departments.'"  See, <u>Bouaphakeo</u>, 564 F.Supp.2d at 909.

In <u>Garcia v. Tyson Foods, Inc.</u>, 255 F.R.D. 678 (D. Kan. 2009), the Kansas district court (per Judge Lungstrum) certified a Rule 23 class for plaintiffs' Kansas state law claims that involved Tyson's gang time policies at beef processing plants in Emporia and Holcomb, Kansas.  The Kansas court concluded that the plaintiffs had met all of the requirements under Rule 23 and certified a class which included all employees that were paid on a gang time basis.  <u>Garcia</u>, 255 F.R.D. at 693.

Plaintiffs' Rule 23 certification motion is grounded in the same Nebraska state law claims pertaining to "gang time" payment practices that were involved in the <u>Lopez</u> and <u>Morales</u> cases, which also received Rule 23 certification.  After reviewing the facts of the case at bar and the applicable law, this Court should conclude, as this Court did in the <u>Lopez</u> and <u>Morales</u> cases, that Rule 23 certification is warranted and appropriate here.

> **B.    Class Certification Is Proper As A General Matter Because A Rule 23 Class Action Is The Only Judicious Means Of Challenging Tyson's Pay Practices.**

Class certification is appropriate here because it will protect production workers, most of whom lack the financial resources necessary to bring individual suits against Defendant to stop its unlawful compensation system. The United States Supreme Court in <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591 (1997), said that the drafters of Rule 23 had predominantly in mind vindication of rights of groups of people who individually would be without effective strength to bring their opponents into court at all. The class action mechanism is ideally suited for disposition of this case and is in the interests of judicial economy because at least 2000 current and former production workers[6] have been, and many continue to be, victims of uniform and systemic conduct that deprives them of pay for all work performed.

Rule 23 provides, in pertinent part:

> (a)    Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b)    Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (1)    the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, **or** . . .

---

[6] See, Plaintiffs' Complaint **(Doc. 1)** at ¶ 14 wherein Plaintiffs averred that there are at least 2000 present and former production workers which are potential class members; and see Defendant Tyson's June 4, 2008 Answer **(Doc. 10)** at ¶ 14 in which Tyson admits that there may have be at least 2000 potential class members.

(B)     adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; **or** . . .

(2)     the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; **or**

(3)     the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23 (emphasis added).

Under this standard, the only matters pertinent to a motion under Rule 23 are the requirements of the rule itself. Plaintiffs must satisfy all four requirements of Rule 23(a), showing that: (1) joinder of all members is impractical because the class is too numerous (numerosity); (2) there are questions of fact or law that are common to members of the class (commonality); (3) the claims or defenses raised by the representative parties are typical of those of the class (typicality); and (4) the representative parties will protect the interests of the class fairly and adequately (adequacy of representation). Donaldson v. Pillsbury Co., 554 F.2d 825, 829 (8th Cir. 1977).

Courts have broad discretion in determining whether the elements of Rule 23(a) have been satisfied. See, Reiter v. Sonotone Corp., 442 U.S. 330 (1979)(holding that

district courts are vested with broad power and discretion in matters of certification and management of class actions). In determining whether plaintiffs have met the burden of proof for class action certification, the court may not consider the factual merits or weaknesses of plaintiffs' underlying claims. Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974). In reviewing class certification, the factual allegations of the complaint must be accepted as true. Kahan v. Rosenstiel, 424 F.2d 161, 169 (3rd Cir. 1970). Moreover, Plaintiffs need not prove that class members have been damaged in order to certify the class. Stewart v. Associates Consumer Discount Company, 183 F.R.D. 189, 194 (E.D. Pa. 1998). For class certification, the class need only satisfy the technical requirements of Rule 23(a) and any one of the requirements of Rule 23(b). Eisen, 417 U.S. at 161 (1974). Once the court is satisfied that the requirements are met, certification is a matter of right. United States Parole Commission v. Geraghty, 445 U.S. 388, 403 (1980).

As demonstrated below, in this case, Rule 23 is satisfied by Defendant Tyson's readily admitted uniform pay practices regarding its hourly production workers in the Kill, Cut and Conversion departments. Indeed, Plaintiffs easily meet the requirements to certify a class under both Rule 23(b)(1) and (b)(3).

### C.     The Instant Class Satisfies All Of The Requirements Of Rule 23(a). [7]

#### 1.     Numerosity Is Easily Satisfied.

The numerosity requirement of Rule 23(a)(1) requires consideration of the number of persons in the proposed class, the nature of the action, the size of the

---

[7] "In general, Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule." Lessard v. Metrop. Life Ins. Co., 103 F.R.D. 608, 610 (D. Me. 1984). See also In re Prudential Ins. Co. of America Sales Practices Litigation, 962 F. Supp. 450, 508 (D.N.J. 1997), aff'd, 148 F.3d 283 (3d Cir. 1998), cert. denied, 525 U.S. 1114 (1999) ("In a borderline case, the Court should allow class certification . . . ."); Walsh v. Pittsburgh Press Co., 160 F.R.D. 527, 529 (W.D. Pa. 1994).

individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicality of joining all the putative class members. Paxton v. Union National Bank, 688 F.2d 552 (8th Cir. 1982).   Impracticality is not a rigidly defined concept and it is considered on a case-by-case basis. Parkhill v. Minnesota Mut. Life Ins. Co., 188 F.R.D. 332, 337 (D. Minn. 1999).  Impracticality of joinder is a question to be determined by the court "based upon all the circumstances surrounding a case." Boyd v. Ozark Air Lines, Inc., 568 F.2d 50, 55 (8th Cir. 1977).   While there is no numerical requirement for satisfying the numerosity requirement, courts have acknowledged that as few as forty class members generally satisfies the numerosity requirement.   Herbert Newberg, et al., Newberg on Class Actions, §3.5 at 247-48 (4th ed.).  A class of this size and dimension – more than 2,000 meat processing workers - easily satisfies the numerosity requirement of Rule 23(a)(1).

### 2.      Many Common Questions Of Law And Fact Exist.

Rule 23(a)(2) requires a determination that there are "questions of law or fact common to the class" to unite the potential Plaintiffs in this case.  The analysis of commonality, typicality, and adequacy of representation requires a discussion of often overlapping facts.  The commonality and typicality requirements tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  Those requirements therefore also tend to merge with the adequacy of representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 158 (n. 13)(1982).

Even when individual members of the class are not identically situated, if the legal question they share in common is related to the determination of the litigation, the commonality requirement is met. See, DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995). Similarly, factual differences among individual claims will not defeat commonality provided the claims arose from a common nucleus of operative facts. Id. Commonality is not required on every question raised in the class action. Id.

The questions of law and fact in this case are common to the class and predominate over any questions affecting only individual class members - namely, whether Defendant Tyson has violated Nebraska wage and hour state laws by not paying production workers at its Madison, Nebraska facility for all work performed prior and subsequent to "gang time," particularly the time spent donning, doffing, and cleaning personal protective equipment. The answers to these questions of law and fact are common to all Plaintiffs and all other production and support workers at the Madison, Nebraska facility. In their Complaint, Plaintiffs identify several common questions of law and fact that would pertain to all members of the class. See, Plaintiffs' Complaint (Doc. 1) at ¶ 18.

In the Bouaphakeo case, the Northern District of Iowa concluded with respect to commonality that a proposed class of hourly employees paid under Tyson's gang time compensation system met the Rule 23 commonality requirement in an action alleging violations of the Iowa Wage Payment Collection Law (IWPCL) where over 75% of the nearly 1600 employees at Tyson's Storm Lake, Iowa facility had been paid via gang time. Bouaphakeo, 564 F.Supp.2d at 903-904. This Court should reach the same legal

conclusion on identical facts which also pertain to similar Nebraska state law claims.

### 3.    The Claims Of The Named Plaintiffs Are Typical.

To be given authority to represent a class, a named plaintiff must have common interests with class members and the ability and willingness to vigorously pursue the interests of the class. Paxton v. Union National Bank, 688 F.2d 552 (8th Cir. 1982). A fundamental requirement of maintaining a class action is that the representatives must be members of the classes they seek to represent; the representatives must also possess the same interest and have suffered the same injury at the members of the class. Roby v. St. Louis Southwestern Ry. Co., 775 F.2d 959, 961 (8th Cir. 1985). Typicality requires a demonstration that the members of the class have the same or similar grievances as the named plaintiffs. Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996).

The Supreme Court has held that the typicality requirement mandates that the representative "possess the same interests and suffer the same injury." East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 403 (1977).   The presence of claims that require proof of individual reliance, does not defeat "typicality," particularly where there is an alleged common course of conduct. See Fuller v. Fruehauf, 168 F.R.D. 588, 600 (E.D. Mich. 1996).

Here, a comparison of the claims of the Plaintiffs with other production workers shows the typicality requirement is easily met. Each Plaintiff, like all other production workers, works or did work as a production employee at Defendant's Madison, Nebraska facility. All class members are alike in that they have not been paid for all time spent donning, doffing, and cleaning their personal protective equipment and for walking time associated with these tasks. Defendant Tyson acted uniformly as to all of its production

workers in deciding not to pay them for all of the time spent engaging in these required activities. Tyson readily concedes the typicality of the employees' claims by admitting the allegations in Paragraph 24 of Plaintiffs' Complaint that they use a gang-time plus payment of some "extra minutes" a day system of paying workers for pre- and post-shift activities. <u>See</u>, Defendant Tyson's Answer (**Doc. 10**) at ¶ 24.

In the <u>Bouaphakeo</u> case, the Northern District of Iowa concluded with respect to typicality that a proposed class of hourly employees paid under Tyson's gang time compensation system met the Rule 23 typicality requirement since their claims were based on the same legal theory that Tyson's gang time compensation system was unlawful. <u>Bouaphakeo</u>, 564 F.Supp.2d at 905. This Court should reach the same legal conclusion on identical facts.

### 4. Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Proposed Class

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation focuses on two issues: (1) whether the representatives have common interests with class members; and (2) whether the representatives will vigorously prosecute the interests of the class. <u>Paxton</u>, 688 F.2d at 562-63. The Eighth Circuit has also stated that this requirement encompasses two distinct factors: (a) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class. <u>U.S. Fidelity & Guar. Co. v. Lord</u>, 585 F.2d 860, 873 (8th Cir. 1978).

The adequacy of representation issue is of critical importance in all class actions and the district court is under an obligation to pay careful attention to the Rule 23(a)(4)

prerequisite in every case.  <u>Vervaecke v. Chiles, Heider & Co., Inc.</u>, 578 F.2d 713, 719 (8th Cir. 1978).  The burden is on the party opposing the class (Defendant Tyson here) to demonstrate that representation will be inadequate.  <u>Lewis v. Curtis</u>, 671 F.2d 779, 788 (3d Cir.), <u>cert. denied</u>, 459 U.S. 880 (1982).

There is no conflict or antagonistic interest of the named Plaintiffs to the interest of any other production workers.  The Plaintiffs have the same interests as all other production workers:  recovering the wages earned and owed for all work performed.

Plaintiffs' counsel are experienced trial lawyers with considerable experience in litigating wage and hour class actions throughout the United States, including the <u>Lopez</u> and <u>Morales</u> cases that have already resulted in this Court certifying Rule 23 classes in each case.  Plaintiffs and their counsel are not only experienced, but committed to this case on behalf of all affected production workers.  Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

**D.      This Action Is Maintainable As A Class Action Under Rule 23(b).**

In order to be certified, a class need only satisfy **one subsection of Rule 23(b)**. <u>Georgine v. Amchem</u>, 83 F.3d 610, 624 (3d Cir. 1996), <u>aff'd</u>, 521 U.S. 591 (1997). Although only one subsection is required, Plaintiffs satisfy the requirements of both Rule 23(b)(1) and (b)(3).

**1.      Class Certification Is Appropriate Under Rule 23(b)(1) Because A Class Action Will Eliminate The Risk Of Inconsistent Adjudications And Variance of Standards Applied To Tyson's Labor Policies.**

Class actions are certified to avoid the chance of inconsistent adjudications in cases, such as this one, which involves Defendant Tyson's non-payment of wages to its production and support employees for all work performed.  Differing results in separate

actions could impair Defendant Tyson's ability to "pursue a uniform continuing course of conduct." In cases involving labor relations, such as this one, courts commonly certify class actions under Rule 23(b)(1) because "defendants often provide 'unitary treatment to all members of [the proposed class] and thus the rights of absent class members are often implicated by litigation brought by other class members'." SmithKline, 201 F.R.D. at 396-97. See also White v. Nat'l Football League, 822 F. Supp. 1389, 1408 (D. Minn. 1993); Robertson v. Nat'l Basketball Ass'n, 389 F. Supp. 867, 901 (S.D.N.Y 1975). As stated previously, Defendant Tyson acted uniformly as to all of its production workers in deciding not to pay them for all of the time spent engaging in these required pre- and post-shift activities. Tyson readily concedes that they use a gang-time plus payment of "extra minutes" system of paying production workers in the Kill, Cut and Conversion departments. See, Defendant Tyson's Answer (**Doc. 10**) at ¶ 24.   See also, Unger Deposition (**Exhibit "A"**) at p. 11-17.

Clearly, under Rule 23(b)(1)(A), it is in the interests of judicial economy and consistent results to litigate in this one action all of the claims of the workers who can allege that Tyson has violated Nebraska law by depriving its production employees of pay for all worked performed. Certification is also required under Rule 23(b)(1)(B) because, the prosecution of separate actions by individual class members against Defendant Tyson would create "a risk that adjudication with respect to such class members would substantially impair or impede the ability of other class members to protect their interests." In re Foundation for New Era Philanthropy Litigation, 175 F.R.D. 202, 208 (E.D. Pa. 1997). See also; Vargas v. Calabrese, 634 F. Supp. 910, 919-20 (D.N.J. 1986).

The risk of inconsistent adjudications and differing results is great in a case such as this. There are at least 2,000 hourly current and former production and support workers, and likely many more, whose interests will be advanced. Most, if not all, of these workers lack the financial resources to litigate alone against a corporate giant like Tyson Foods.

### 2. Class Certification Is Appropriate Under Rule 23(b)(3) Because Common Questions Predominate Over Individual Questions.

The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. Amchem, 521 U.S. at 623. Rule 23(b)(3) analysis focuses on two principal elements. First the court must determine whether common questions of law or fact predominate (predominance) and second, whether a class action is the superior means of resolving the matter (superiority). See, Darms v. McCullough Oil Corp., 720 F.2d 490, 493 (8th Cir. 1983). In examining this requirement, a court is to "conduct a limited preliminary inquiry, looking behind the pleadings . . . to determine whether, given the factual setting of the case, if the plaintiffs general allegations are true, common evidence could suffice to make out a prima facie case for the class." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005).

The common questions of law and fact in this action are best resolved by a class action as opposed to the filing and prosecution of hundreds, if not thousands, of other lawsuits by individual employees. The common questions of fact and law in this litigation are centered around Tyson's uniform course of conduct in refusing to pay its production workers for all work performed before and after their gang time vis-à-vis the donning, doffing, and cleaning of safety and sanitary equipment and clothing. See, Plaintiffs' Complaint (**Doc. 1**) at ¶ 19. Under these circumstances, common questions

17

predominate.

Common questions of law also predominate because the same operative facts underlying Defendant Tyson's uniform refusal to pay production workers for all time spent donning, doffing and cleaning their personal protective equipment form the basis of Plaintiffs' claims for violation of Nebraska state law. These claims are a common remedy for all of Tyson's current and former production workers in seeking payment of wages for all work performed.

In the Bouaphakeo case, the Northern District of Iowa concluded Tyson's hourly workers at the Storm Lake, Iowa facility had satisfied the Rule 23 predominance requirement because common evidence would pertain to all class members who had to prove that they had not been paid for all work performed under the gang time compensation system and most or all gang time employees wore at least some basic PPE and used some kind of knife or tool and variations were limited. Bouaphakeo, 564 F.Supp.2d at 908-909. This Court should reach the same legal conclusion on identical facts.

3.      **Class Certification Is Appropriate Under Rule 23(b)(3) Because The Class Action Is "Superior" To Other Means Of Adjudication.**

As a threshold matter, a principal concern regarding "superiority" is whether, in the absence of a class action, most members of the class will be deprived of any legal redress, because their claims are relatively modest compared to the cost of litigation. Phillips Petroleum v. Shutts, 472 U.S. 797, 809 (1985); Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997).

Defendant Tyson cannot offer any alternative form of adjudication that is superior

to a class action. Instead, it will seek to put its past and present production employees out of court by arguing that adjudicating their claims requires individual analysis in terms of damages. A class action is far superior to any other available method of disposing of at least 2,000 claims. Indeed, for most of Tyson's production workers, it is the *only* method available. Each factor identified in Rule 23(b)(3) as being pertinent to such an analysis warrants certification here.[8]

Not only is a class action superior to other methods of adjudication, for most Tyson production workers it is the only way that they can present their claims, which are relatively modest compared to the cost of litigation. Shutts, 472 U.S. at 809. For most, if not all, of Tyson's current and former production workers, litigating alone against Defendant Tyson is not possible or realistic:

> To permit defendants to contest liability with each claimant in a single, separate suit, would in many cases give defendants an advantage that would be almost equivalent to closing the door of justice to all small claimants. This is what we think the class suit practice was designed to prevent.

Weeks v. Bareco Oil Company, 125 F.2d 84, 90 (7th Cir. 1941). This class action will give thousands of workers an opportunity to resolve their claims in one lawsuit and it is far superior to the possibility of hundreds, if not thousands of individual lawsuits that would challenge the same practices and procedures which result in the non-payment of wages for all work performed.

As set forth below, the additional non-exclusive factors of Rule 23(b) prove the superiority of class action, i.e., the interests of members of the class in separate litigation,

---

[8] The Supreme Court has specifically ruled that the merits of the underlying claim may not be inquired into by the district court making the class action determination. Eisen, 417 U.S. at 177-78.

the extent of any pending litigation, any potential management difficulties, all weigh in favor of certifying the proposed class.

In the Bouaphakeo case, the Northern District of Iowa concluded Tyson's hourly workers at the Storm Lake, Iowa facility had satisfied the Rule 23 superiority requirement because the alternative to class action litgation was individual lawsuits by class members which would have been both more burdensome on class members and a less efficient use of judicial resources. Bouaphakeo, 564 F.Supp.2d at 909. This Court should reach the same legal conclusion on identical facts.

a.      **Interest In The Case.**

This factor addresses whether the interest of most production workers in conducting separate lawsuits is so different as to require denial of class certification. In the instant case, production workers all seek a common finding that Defendant Tyson has violated Nebraska law by failing to pay them for all work performed. There is no conflict within the class, and there are no individual aspects to render the parties within the class adverse to one another.

Considerations relevant to this inquiry include:

- the degree of cohesion among class members;

- whether the amounts at stake for individuals .. [are] so small that separate suits would be impracticable; and

- the extent to which "separate suits would impose... [burdens] on the party opposing the class, or upon the Court calendars ...."

See Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 104 (1966).

The class is estimated to encompass at least 2,000 members consisting of

Defendant's current and former production workers at its Madison, Nebraska facility. Most of the production workers in this case have little incentive or ability to prosecute their claims against Tyson, which is a huge national corporation, in individual actions. Additionally, the high cost of litigating each claim separately, including the likely need for expert testimony on time-keeping issues, will serve as a substantial obstacle to pursuing individual litigation.[9] See Shutts, 472 U.S. at 808-10. The proposed class members simply do not have resources to engage in lengthy litigation against Defendant Tyson. In short, it is evident that the vast majority of production workers have no ability to prosecute separate lawsuits against Defendant Tyson.

### b.   This Court Is A Desirable Forum

Rule 23(b) also concerns itself with the desirability or undesirability of concentrating the litigation of the claims in the particular forum. The United States District Court for the District of Nebraska will provide an excellent forum for this matter because Defendant's Madison, Nebraska facility is located within this judicial district and all of the class members work or did work at that site within the relevant time period. Because individual adjudications could take up the dockets of several judges within this Court, there is no reason to further burden an overloaded court system when one adjudication will simply and efficiently satisfy the claims of thousands. The Court must seek to effectuate the policy expressed in Rule 23 in favor of having all similar cases "disposed of where feasible, in a single lawsuit." Gulf Oil Co. v. Bernard, 452 U.S. 89,

---

[9] Plaintiffs' wage rates at the Madison facility currently range from $11.00 per hour to a maximum of $16.00 per hour. See, Unger Deposition (**Exhibit "A"**) at p. 45-47. It is highly unlikely that any individual Plaintiffs would have the financial ability to hire their own legal counsel and pay any experts necessary to put on an individual case against Defendant Tyson.

99 n.11 (1981).

### c.        Manageability.

Manageability compares the class action device to other methods of adjudicating

the controversy.  Only when management difficulties make a class action less fair and

efficient than some other method, such as individual interventions or consolidation of

individual lawsuits, would a class action become improper.  See 1 H. Newberg,

NEWBERG ON CLASS ACTIONS § 4.32, at 4-125 (1992).  Here, Defendant Tyson's

production workers assert claims under Nebraska state law based upon the same

underlying operative facts.

While this class action would involve more than 2,000 class members, this class

action is readily manageable, particularly when compared to classes in other larger and

more complicated cases that have been managed successfully through settlement or trial.

See e.g., Duhaime, 177 F.R.D. at 62 ("class consists of persons or entities who have or

had an ownership interest in one or more of approximately 3.8 million [insurance]

policies"); Sollenbarger v. Mountain States Tel. and Tel. Co., 121 F.R.D. 417 (D.N.M.

1988)(antitrust class of thousands consisting of all telephone customers in several states

approved); In re Cement and Concrete Antitrust Litigation, 27 Fed.R.Serv.2d 1334 (D.

Ariz. 1979)(antitrust class of approximately 500,000).

Given the size and scope of this class, joinder and intervention are not possible or

superior alternatives.  Additionally, the claims in this action are particularly suited for

class action treatment because thousands of Tyson's production and support workers

have been similarly affected and Defendant Tyson possesses all the information

concerning the identity of the members of the class and the precise information as to how

and to what extent the members of the class have been damaged. For example, all of the proposed class members' names, social security numbers, and dates and times worked are undeniably contained in Tyson's own business records and computer system since Tyson needs this information for tax withholding purposes.

Assuming, arguendo, for purposes of this motion, that Defendant Tyson has violated Nebraska law by not paying its production and support workers for all time worked, the proofs of causation and liability are not different – they are identical. Defendant Tyson may assert commonly applicable affirmative defenses – but cannot assert individual ones. No individual proofs are necessary for damages because damages can be calculated by a simple formula using all the relevant information including, name, social security number, and date and times worked included in Tyson's business records and computer systems.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move this Court to grant their Motion for Rule 23 Class Certification.

Respectfully submitted,

/s/ Brian P. McCafferty

BRIAN P. MCCAFFERTY
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327 (phone)
(610) 940-0284 (fax)
cafstar@aol.com

MICHAEL HAMILTON
Provost Umphrey Law Firm, L.L.P.
2021 Richard Jones Road, Suite 300
Nashville, TN 37215

Phone: (615) 242-0199
Fax:  (615) 256-5922
E-Mail:  mhamilton@provostumphrey.com


ROGER K. DOOLITTLE
460 Briarwood Drive, Suite 500
Jackson, MS 39206
(601) 957-9777 (phone)
(601) 957-9779 (fax)
E-Mail:  rogerkdoolittle@aol.com

Dated:  June 8, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that on June 8, 2010, I electronically filed the foregoing Plaintiffs' Memorandum Of Law In Support Of Their Motion For Rule 23 Class Certification with the Clerk of Court using the CM/ECF system which sent notification of such to the following counsel for Defendant Tyson:

> Michael J. Mueller, Esq.
> Evangeline Paschal, Esq.
> Alison D. Balus, Esq.
> Steven D. Davidson, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

> None.

/s/ Brian P. McCafferty
_____
Brian P. McCafferty

Dated: June 8, 2010

3