IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA
OMAHA DIVISION

| | |
|---|---|
| MANUEL ACOSTA, et al., individually, and on behalf of a class of others similarly situated, | Case No. 8:08-cv-0086-JFB-TDT |
| Plaintiffs, | |
| v. | PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR RULE 23 CLASS CERTIFICATION |
| TYSON FOODS, INC. | |
| Defendant. | |

Plaintiffs Manuel Acosta, et al., on behalf of themselves and all others similarly situated, and by and through their undersigned attorneys, submit this Reply Brief In Support Of Their Motion For Class Certification Pursuant To Federal Rule Of Civil Procedure 23.

## I. INTRODUCTION

In Opposition to Plaintiffs' Motion For Class Certification, Defendant Tyson makes several arguments: (1) Plaintiffs have not presented enough evidence to support their class certification motion; (2) this Court should ignore or discount the fact that both this Court and several other courts, including the Northern and Southern Districts of Iowa, have already certified _five_ Rule 23 classes against Tyson based on the exact same "gang time" payment system that Tyson uses at the Madison plant at issue here[1];

---

[1] These five decisions are: Bouaphakeo v. Tyson Foods, Inc., 564 F.Supp. 2d 870, 903-904 (N.D. Iowa 2008); Lopez v. Tyson Foods, 2008 WL 3485289 (D. Neb. 2008); Garcia v. Tyson Foods, 255 F.R.D. 678 (D. Kan. 2009); Robinson v. Tyson Foods, Inc., 3:07-cv-00088-JAJ (S.D. Iowa 2009), attached hereto as **Exhibit "A"**; and since the filing of Plaintiffs' motion for class certification, the Southern District of Iowa

(3) Plaintiffs have not established that there is an unlawful policy common to most or all class members and (4) Plaintiffs' putative state law class does not meet the requirements of Federal Rule of Civil Procedure 23(a) and 23(b). These arguments are neither accurate nor preclude certification of Plaintiffs' state law claims under Rule 23 for the reasons set forth below. In fact, these are largely the same failed arguments that both this Court and three other district courts have already thoroughly rejected in certifying five Rule 23 classes against Defendant Tyson for those case plaintiffs' Iowa, Nebraska and Kansas state law claims.

## II.    ARGUMENT

### A.    Plaintiffs Have Provided More Than Sufficient Evidence To Support Their Rule 23 Class Certification Motion.

Tyson first argues that Plaintiffs have not provided enough factual evidence to support a conclusion that Rule 23 certification is warranted. See, Tyson's Brief In Opposition at 19-27. Plaintiffs entirely disagree and note that the bulk of the evidence presented is from Tyson's own pleadings and corporate deponent witnesses.[2]

---

recently certified yet another Rule 23 class against Tyson in the Edwards v. Tyson Foods, Inc., 4:08-cv-00113-JAJ matter. A copy of this opinion is attached as **Exhibit "B"** to this Brief.

[2] Defendant Tyson also complains, incorrectly, that Plaintiffs cite to their own class complaint for support in laying out the factual background of the case and that this is problematic in establishing a Rule 23 class. See, Defendant's Opposition Brief at pages 22-23. Factually speaking, Plaintiffs have submitted evidence from Tyson's own corporate representatives that more than support the Complaint's factual allegations. Legally speaking, a court must accept as true the plaintiff's allegations in evaluating a motion to certify a class, though a court may also look beyond the pleadings to determine whether the Rule 23 requirements are met. Estate of Mahoney v. R.J. Reynolds Tobacco Co., 204 F.R.D. 150, 153 (S.D. Iowa 2001).

The deposition testimony of Tyson's own corporate designees has provided ample evidence as to the uncontested fact that the predominant majority of Tyson's hourly workforce (the approximately 80% or more of the hourly workforce that works in the kill, cut and converting departments at Tyson's Madison facility) are paid on a "gang time" basis (See Mary Unger Deposition at p. 9, attached as Exhibit "A" to Plaintiffs' June 8, 2010 motion brief).[3]

As stated in Plaintiffs' motion brief[4], Tyson corporate witness Mary Unger testified that approximately 851 of the 970 hourly workers at the Madison plant work in the Kill, Cut and Converting departments and that as long as they are not doing set up or tear down work, the hourly employees in those departments are paid on a gang time basis. Unger also estimated that only 30 of these 851 hourly employees in the Kill, Cut and Conversion departments did some form of "set-up" or "tear down" work. Id.

Another thing Tyson tries to completely ignore is that Plaintiffs' class definition expressly excludes employees who are not paid based on gang time. Accordingly, even if 30 of the approximately 851 hourly employees in the Kill, Cut and Converting departments at Madison are not paid on gang time, all that means is that those 30 employees would be excluded from the class by definition. It does not mean that the Court should not certify a class on behalf of the remaining 800+ hourly employees (as well as former employees who held those positions during the class period) who are or

---

[3] In Bouaphakeo v. Tyson Foods, Inc., 564 F.Supp. 2d 870, 903-904 (N.D. Iowa 2008), the district court similarly found that over 75% of Tyson's 1600 employees at the Storm Lake, Iowa pork processing facility were paid via the gang time system.

[4] See Plaintiffs' June 8, 2010 Brief at page 4, making reference to Exhibit "A" page 9 attached to that Brief.

were paid on the gang time basis leaving them to try to bring 800+ individual cases against Defendant Tyson for the same claims.

Tyson also complains that Plaintiffs do not provide much evidence from the Plaintiffs themselves to support class certification (See, Opposition Brief at p. 24). In addition to the obvious irrelevancy of this argument, it should not be surprising at all to this Court that Tyson's own corporate witnesses would be better able to provide evidence of Tyson's own corporate policies and payment practices that apply universally to most or all hourly production employees. Thus, Plaintiffs do rely principally on Tyson's own admissions and the testimony of Tyson's own corporate witnesses to support their class certification motion. As a result, Tyson is forced to spend much of its Opposition brief trying to discredit, impeach and parse the statements of its own witnesses.

Tyson also attempts to manufacture an issue by claiming that the differences between workers in the personal protective equipment ("PPE") they wear and the types of knives or tools they use creates an impediment to class certification because the claims of the class members are not typical of each other. See, Tyson's Opposition Brief at 8-13. This argument was evaluated and rejected by the Northern District of Iowa in the Bouaphakeo case:

> However, if the class is confined to employees paid via gang time, the typicality requirement is met because their claims are based on the same legal theory-that Tyson's gang time compensation system is unlawful. In addition, among gang time paid employees, the evidence only shows factual differences regarding the specific PPE these employees wear and the tools they carry. The court does not feel these differences necessitate individualized inquiry to prove a violation because most all gang time employees wear at

> least the same basic PPE and use some kind of knife or tool. Moreover, there is not an indefinite amount of PPE to don and doff or tools to be used, and thus the factual variations between employees paid via gang time are limited.

Bouaphakeo, 564 F.Supp. 2d at 905. This Court should likewise reject Tyson's attempt to manufacture minute differences among gang-time paid hourly employees.

Summarily, Tyson uses a uniform system to pay the large majority of their hourly employees at the Madison plant and Plaintiffs have filed a class action lawsuit challenging the propriety of that payment system and whether it violates Nebraska state law. That is the simple legal issue presented in this class certification motion. All of the minutia that Tyson tries to inject into the class certification process - - trifles such as how many gloves one employee wears as opposed to another employee, or who supervises which employee - - are merely an attempt to distract the Court from taking the straight-forward approach that this Court has previously taken and other courts have taken in certifying a Rule 23 class. This Court should ignore Tyson's minutia and correctly focus, as it has previously done, and as three other district courts have already done, on whether Tyson's widely used gang time system makes this case suitable for Rule 23 class certification as discussed below.

  **B.**  **Plaintiffs Correctly Rely On A Prior Decision Of This Court And Prior Decisions Of Three Other Courts Which Have Already Certified Rule 23 Classes Against Tyson Based On Precisely The Same "Gang Time" Payment System That Is Involved Here.**

Tyson also argues that this Court should ignore or discount the fact that four district courts, including this Court, the Northern and Southern Districts of Iowa and the District of Kansas, have already certified five Rule 23 classes against Tyson based on

exactly the same "gang time" payment system that is involved here.  <u>See</u>, Tyson's Brief In Opposition at 25-27.  Tyson makes varied arguments in a fruitless attempt to distance itself from these five prior cases in which they lost precisely the same Rule 23 class certification issue.

 First, Tyson makes the obvious point that none of the prior five decisions involved precisely the Madison, Nebraska facility involved here.  While this is certainly true, Tyson cannot dispute that these five prior case decisions provide unusually persuasive authority because they: (1) involve the same Defendant company (Tyson Foods) as well as the same company pay practices and pay policies (i.e. the "gang time" payment system); (2) they involve the same legal issues of whether plaintiffs with state law wage payment claims should be certified as a Rule 23 class; and (3) all five decisions reach the same common denominator that Tyson's uniform gang time payment that applies to a great majority of the hourly workers renders these cases as suitable for Rule 23 class treatment.

 Second, Tyson argues that these five decisions are not factually or legally similar to the matter pending before this Court.  Plaintiffs assert that a cursory review of the five prior Tyson decisions certifying Rule 23 decisions will demonstrate that all five of those prior cases are both factually and legally similar to the case <u>at bar</u> in the following manner:

 1. Similar to the case <u>at bar</u>, all five previous cases refer to Tyson using a "gang time" system of payment that only pays most hourly employees at its plants for the time when the actual production line is moving: See, <u>Garcia</u>, 255 F.R.D. at 683 ("The vast majority of hourly production workers at these facilities are paid on a "gang time" basis;

that is they are paid for only that time when the production line is moving."); Lopez, 2008 WL 3485289 *5 ("The defendant admits that most of the hourly production workers at the Lexington, Nebraska facility are paid based on gang time, plus four minutes a day for pre-and post-shift activities."); Bouaphakeo, 564 F.Supp. 2d. at 878 ("The employees in the Kill, Cut, and Retrim departments are paid by 'gang time,' or the length of production in their department which, which is generally the time it takes for hogs to travel on mechanized belts through the department."); Robinson, November 13, 2009 Opinion at page 2 **(Exhibit "A')** ("According to Duncan, some hourly employees in the Kill, Cut, and Converting are paid in part through "gang time." a system that ensures each employee is paid for the length of production in their department, which is the time it takes for all carcasses to travel on mechanized belts through the department."; and Edwards **(Exhibit "B"** at 2)("Both Hook and Moulin testified that hourly employees in the Kill, Cut, and Conversion Departments are paid by a "gang time" system).

2. Moreover, similar to the case at bar, all five prior cases involve claims for unpaid time spent donning, doffing and washing PPE and tools as well as walking time associated with those activities: See, Garcia, 255 F.R.D. at 683 ("As a general rule, however, Tyson does not pay its employees for time spent performing activities outside the movement of the production line, including actual time spent donning and doffing protective gear and clothing; rinsing and sanitizing knives and equipment; and walking to and from the production line. . . . Plaintiffs in this case allege that Tyson, by failing to compensate its hourly production workers for all time worked, has denied wages and overtime pay to those employees."); Lopez, 2008 WL 3485289 *1 ("Plaintiffs contend

that the defendant has failed to compensate them for time spent (1) donning and doffing required clothing and safety equipment, before, during and after their shifts; (2) preparing safety supplies and equipment; and (3) walking time that follows or relates to these activities."); Bouaphakeo, 564 F.Supp. 2d. at 903 ("Plaintiffs claim they meet this commonality requirement because they all share the common question of 'whether Defendant Tyson has violated [the IWPCL] by not paying production workers at its Storm Lake, Iowa, facility for all work performed prior to and subsequent to 'gang time,' particularly the time spent donning, doffing, and cleaning personal protective equipment.'"); Robinson, November 13, 2009 Opinion at page 2 (**Exhibit "A"** at 2) ("Plaintiffs claim that the defendant does not pay its employees for all required pre-production line and post-production line activities that are necessary and integral to their overall employment responsibilities, such as: donning and doffing clothing and personal protective equipment ("PPE"), cleaning and sanitizing equipment . . . ."; and Edwards (**Exhibit "B"** at 2)("Plaintiffs claim that the defendant does not pay or fully pay production and support employees at its Perry and Waterloo meat processing facilities for time spent at work donning, doffing and cleaning personal protective equipment ("PPE") before and after shifts on the production line and during unpaid break times.").

 Thus, a review of the five prior cited certification decisions will show that those decisions are factually and legally identical to the matter now pending before this Court. This Court should reach the same conclusions as the Garcia, Lopez, Robinson, Edwards, and Bouaphakeo courts and decide to certify this matter as a Rule 23 class.

 Defendant Tyson also argues in its Opposition Brief that "recent decisions

suggest that courts are tightening the standard for class treatment." See, Tyson's Resistance at 25-26. Specifically, Tyson cited to the Third Circuit's decision in In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305 (3rd Cir. 2008), as evidence of this supposed heightened standard.[5]

Plaintiffs disagree both that: (1) there is any overwhelming national trend to tighten Rule 23 class evaluation; and (2) that Plaintiffs' Rule 23 state law claims would fail such a "heightened" analysis. Plaintiffs here are not merely relying on claims made in their complaint but have instead submitted direct evidence and admissions from Tyson establishing the unequivocal existence of a "gang time" payment system and the fact that the large majority of its hourly workforce are paid according to this gang time system. Accordingly, this "heightened standard" which Tyson points to is both non-existent and entirely a non-issue in this matter.

### C. Failing Or Refusing To Pay Workers For All Time Spent Donning Doffing And Washing Their PPE Because Of A Gang Time System Is A Common Unlawful Policy Common To Most Or All Class Members.

Plaintiffs asserted in their class certification motion that this matter involved Defendant Tyson's policy, common to all class members, of deciding not to pay its production workers for all time spent engaging in required pre- and post-shift work activities and instead paying workers on a "gang time" basis. See, Plaintiffs motion

---

[5] In re Hydrogen Peroxide Antitrust Litigation did not involve the same state law "wage and hour" claims that are involved here. This case involved a class action pled under federal anti-trust laws. See, 552 F.3d 308. Essentially, the Third Circuit said in this case that if the parties have submitted factual evidence that supports (or detracts from) the elements of Rule 23 class certification then a district court should consider that evidence. Plaintiffs submit that this conclusion is neither revolutionary in class action law nor different from what district courts typically do in evaluating class certification matters.

brief at 16. In its Opposition (at pages 29-32), Tyson contends that the "gang time" payment system is not illegal per se, and that variations in equipment worn and tools and knives used hampered Plaintiffs' efforts to establish commonality.

The Southern District of Iowa's very recent Rule 23 certification decision in Edwards addressed and rejected this precise argument:

> Plaintiffs have limited their proposed class to those employees being paid on a "gang time" basis, which is the admitted and uniform pay practice among most production employees at defendant's Perry and Waterloo facility. Defendant's argument that most employees are not paid on a "gang time" basis because they also receive a few additional minutes is unavailing and does not change the fact that the significant portion of the compensation of the proposed class is "gang time." Whether the additional time allotted is sufficient to cover the time spent donning, doffing and cleaning PPE (and associated walk time) is the heart of this lawsuit.

Edwards (**Exhibit "B"**) at p. 7. This Court should likewise reject Tyson's efforts to distance itself from its own gang time policies.

### D. Plaintiffs' Putative State Law Class Meets All Requirements Of Federal Rule Of Civil Procedure 23.

In its Opposition Brief to Plaintiffs' Motion for Class Certification under Rule 23, Defendant Tyson makes several ineffectual arguments against class certification: (1) that the Named Plaintiffs are not adequate class representatives (Tyson's Opposition p. 27-29); (2) despite the fact that its own corporate designee witness (Mary Unger) has testified that approximately 80%+ of the hourly workforce (821 of the 970 hourly employees at Madison) are paid via the "gang time" system, the remaining workers not paid on gang time render these cases more suited for individual rather than class

treatment; and (3) potential individualized defenses also deter class certification.

First, addressing the adequacy of representation argument, Manuel Acosta is undoubtedly an adequate class member. His claim for unpaid donning and doffing time is the same claim as everyone else in the class; unpaid time for donning, doffing and washing his PPE (and associated walking time) before and after shift and during his unpaid breaks. He was the lead plaintiff that brought the lawsuit, has participated in all discovery requested, including giving his deposition, and he and his family have assisted Plaintiffs counsel in contacting other putative class members and assisting in the overall litigation during the pendency of this case.

Tyson attacks Plaintiff Acosta on the fact that he only worked for Tyson for "less than three years"; he only held one job position; and because he did not use a knife in his job he did not wear as much PPE as other potential class members[6]. Tyson Opposition at p. 28. These factors do not detract from Plaintiff Acosta's adequacy to be a class representative.[7]

Moreover, 10 additional putative class member plaintiffs did give depositions in

---

[6] Plaintiff Acosta may not have worn as much equipment as some knife-using employees wear, but he still had to wear: steel-toe boots, work pants, shoes, hard hat, hair net, beard net, safety glasses, frock, plastic apron, plastic sleeves, cotton gloves and rubber gloves. See Manuel Acosta Deposition at p. 13-16, attached hereto as **Exhibit "C."**

[7] As the treatise Newberg On Class Actions has stated, one plaintiff with a small claim satsifies the adequate representation test: "Under original Rule 23, there was some authority for the proposition that when the class was large, the number of class representatives should be large as well; but courts have realized that the number of class representatives is not significant under the amended rule. The notion that a single plaintiff can adequately represent a class finds support also in the express language of Rule 23." Newberg On Class Actions Fourth Edition (2002) Alba Conte and Herbert Newberg, § 3:27, p. 438-439.

this case[8]: Carlos Figueroa, Osmany Fernandez, Guadalupe Tello Hernandez, Martha Solano Lopez, J. Santos Andrade, Maria de la Paz Ramirez de Reinaga, Felicitas Rosales, Francisco Hernandez, Daniel Flores, Enrique Contreras Guerrero, and Cesar Gonzalez.  If the Court determined that Manuel Acosta, by himself, was not a sufficient class representative and additional class representatives were necessary, then Plaintiffs would be in a position to add other class representatives from this group of 10 current and former employees who have already given depositions in this matter and are putative class members.

The other two arguments (involving the supposed individual nature of the claims) are the same arguments have been made by Tyson in the Garcia, Lopez, Robinson, Edwards, and Bouaphakeo cases and those courts have rejected those arguments. For example, in Lopez, the this Court stated with regard to the commonality requirement of Rule 23(a):

> The plaintiffs argue that there are common questions of law and fact because the case is based on whether defendant fails to pay hourly employees for all work prior and subsequent to their shift. [cite omitted]  In contrast, the defendant argues there is wide factual variations among the employees due to their particular activities including types of clothing worn, equipment used and supervisory personnel. [cite omitted]  The court concludes the core of the plaintiffs' suit is based on the same law and common facts.  Here, the defendant relies on a uniform labor practice for most of its production employees.  The practice results in most of the employees engaging in activities for which they are not paid. While the exact amount of time for employees may vary, the employees are performing nearly identical tasks under

---

[8] With regard to Named Plaintiffs Louis Montoya and Martin Hinojosa, these plaintiffs did not refuse to attend their depositions, they just could not be located at the time of their scheduled depositions despite the best efforts of Plaintiffs' counsel.


> nearly identical conditions. Variation among employees due to the types of clothing worn, equipment used and supervisory personnel does not diminish the nature of the general pay system.

See Lopez, 2008 WL 3485289 at * 16.[9] Likewise, the Garcia court also rejected Tyson's Rule 23(b) superiority argument regarding individualized defenses which they purport to stem from these factual differences:

> Tyson contends that a class action is not the superior method of adjudication because of the individualized nature of proof required concerning, by way of example, the particular clothing worn by and equipment utilized by each plaintiff. However, individualized inquiries concerning the particular clothing worn by each plaintiff, the equipment maintained by each plaintiff, and even the amount of compensation each plaintiff may have already received for certain activities by virtue of supervisor discretion are simply issues of damages if the finder of fact determines that Tyson is required to compensate its employees for time spent donning and doffing and has failed to do so.

Garcia, 255 F.R.D. at 693.[10]

## III. CONCLUSION

Based upon the foregoing discussion, Plaintiffs respectfully request that this

---

[9] The Bouaphakeo court reached the same general conclusion that common issues of fact and law that stemmed from Tyson's gang time system were not defeated by factual differences regarding the clothing and equipment worn and used by the hourly workers. See, Bouaphakeo, 564 F.Supp. 2d at 904. Likewise, the Garcia court also rejected Tyson's argument that "wide factual variations" in PPE worn and in supervisor discretion to pay for certain activities undermined the commonality of plaintiffs' common claims for time spent "donning, doffing, walking and the like." See, Garcia, 255 F.R.D. at 689.

[10] The Bouaphakeo court also concluded that a class action was superior to individual lawsuits by class members. See, 564 F.Supp. 2d at 909. Likewise, this Court in Lopez also concluded that a class action was a superior method of resolution of the issues and plaintiffs' claims did not require the "individualized scrutiny described by the defendant . . . ." See, Lopez, 2008 WL 3485289 at *20.

Court certify this matter as a Class Action pursuant to Federal Rule of Civil Procedure 23.

                                          Respectfully submitted,

                                          /s/ Brian P. McCafferty

                                          Brian P. McCafferty, Esq.
                                          Kenney & McCafferty
                                          3031C Walton Road, Suite 202
                                          Plymouth Meeting, PA 19462
                                          (610) 940-0327 (phone)
                                          (610) 940-0284 (fax)
                                          cafstar@aol.com

Dated: August 8, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that a true and correct copy of the foregoing Plaintiffs' Reply Brief In Support Of Their Motion For Rule 23 Class Certification has been served upon the following counsel for Defendant Tyson Foods in accordance with the Local Rules of Civil Procedure via the Court's electronic filing CM/ECF system on August 8, 2010:

>Allison D. Balus, Esq.
>Steven D. Davidson, Esq.
>Michael Mueller, Esq.
>Evangeline Paschal, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

>None.

/s/ Brian P. McCafferty
_____
Brian P. McCafferty, Esq.