**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| MANUEL ACOSTA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 8:08CV86 |
| | ) | |
| vs. | ) | |
| | ) | |
| TYSON FOODS, INC., | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the court on the plaintiffs' Motion for Rule 23 Class Certification (Filing No. 61).  The plaintiffs filed a brief (Filing No. 62) and an index of evidence (Filing No. 63) in support of the motion.  The defendant filed a brief (Filing No. 66) and an index of evidence (Filing No. 67) in opposition to class certification.  The plaintiffs filed a brief (Filing No. 69) and an index of evidence (Filing No. 70) in reply.

**INTRODUCTION**

The plaintiffs are current or former employees who worked some time during the period March 1, 2004, to the present, at the defendant's Madison, Nebraska, meat processing facility.  **See** Filing No. 1 - Complaint ¶¶ 3, 14.  The case was filed as a class action alleging violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201, *et seq.*, and state law regarding pay for pre- and post-production line activities, including "donning and doffing," and other activities in connection with job functions.  The plaintiffs seek relief for alleged violations of state and federal wage-and-hour laws, including for alleged failures to pay minimum wage and overtime compensation for uncompensated job-related activities.

The plaintiffs filed the instant action on February 29, 2008.  **See** Filing No. 1.  The defendant filed an answer on June 4, 2008.  **See** Filing No. 10.  The matter was temporarily stayed while the Judicial Panel on Multidistrict Litigation reviewed, then denied, the defendant's motion to transfer the case.  **See** Filing Nos. 18 and 20.  On November 6, 2008, the court dissolved the stay and the parties were free to begin discovery.  **See** Filing

No. 24.  Due to the volume of class certification discovery materials, the parties were granted several extensions of time to complete such discovery.  **See, e.g.,** Filing No. 53. On June 8, 2010, the plaintiffs filed the instant motion for class certification.  **See** Filing No. 61.  The plaintiffs have not sought conditional certification of a class in relation to the FLSA collective action claims.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint.  The defendant operates a meat processing facility in Madison, Nebraska.  **See** Filing No. 1 - Complaint ¶ 8.  The defendant relies on a compensation system known as "gang time" or "line time," which pays production employees only during the time period they are present on the actual production assembly line.  **Id.** ¶ 24.  Based on the gang time pay system, the defendant does not pay employees for all required pre-production line and post-production line activities and periods of required presence.  **Id.**  Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> donning and doffing clothing and protective equipment, cleaning and sanitizing that equipment, walking to their lockers and/or production line after already performing compensable activities, and at the end of the work day, walking to the wash stations and then to their lockers and/or supply rooms before the end of compensable time, working on knife maintenance equipment known as "steels" or "mousetraps", and waiting in line to receive required knives, supplies, tools and equipment needed for production line activities.

**Id.**

Additionally, the defendant's employees are required to wear special personal protective equipment (PPE) for protection and sanitary reasons.  **Id.** ¶ 25.  The PPE may vary depending on job duties, but includes plastic aprons, belly guards, wrist guards, mesh sleeves, sheaths, gloves, mesh gloves, mesh aprons, hard hats, scabbards, hairnets, earplugs, coveralls, eye protection, and other similar items.  **Id.**  The defendant does not compensate each employee for all the time spent removing, replacing or cleaning PPE at the beginning or end of paid and/or unpaid meal or break periods.  **Id.** ¶¶ 27-30.  However,

the defendant does compensate "some workers," for "clothes changing" or "pre and post shift" time.  *Id.* ¶ 27.  The plaintiffs allege they spend "as much as 30 minutes or more per day performing uncompensated work activities."  *Id.* ¶ 5.  The plaintiffs estimate there are 2000 putative class members.  *Id.* ¶ 14; **see** Filing No. 62 - Brief p. 8.  The plaintiffs specifically limit the class to present or former employees paid under the gang time compensation system and who work in the Kill, Cut, or Conversion Departments.  *Id.* at 1.

The defendant admits it pays its hourly production employees for regularly scheduled time worked on the production line.  **See** Filing No. 10 - Answer ¶ 24.  However, the defendant asserts all hourly employees are properly paid for all compensable time.  *Id.*  The defendant admits certain employees are required to wear varying types of PPE to perform the functions of their job.  *Id.* ¶ 25.  However, the defendant explains that the type and extent of equipment varies among employees based on their job assignment and whether the equipment or clothing is mandatory or optional.  **See *id.***  The defendant asserts the current compensation practice pays employees for twenty to twenty-four minutes each shift for non-production activities.  **See** Filing No. 66 - Response p. 1.[1] However, the defendant acknowledges this practice has changed over time.  *Id.* at 1, 5-8. The defendant states employees may work in different jobs each day, which would impact how much time they are paid for non-production activities, the type of PPE worn, the amount of time taken to don or doff the PPE, and the actual compensation practice in place at the time.  *Id.* at 1.  The defendant argues that these factors render the representative action unworkable.  *Id.* at 1-2.  Additionally, the defendant contends the plaintiffs are not typical because none of them worked in the Kill Department, over the course of the entire class period, or throughout the time period of compensation practice changes.  *Id.* at 2.

The defendant describes the processing facility at issue, as having 36 departments with 766 discrete job categories and approximately 851 current employees on two shifts. **See *id.*** at 3.  The defendant states production employees are paid based on a variety of

_____

[1]  The defendant uses page numbers for the response brief that are different from the document's page sequence (i.e., page four of the document is numbered with a one).  The court will reference the page numbers placed on the document by the defendant.

3

factors, but all are required to "clock in and out before and after their shift." *Id.* at 4. The defendant admits some employees are paid based on predetermined start and end times, or gang time, while others are paid based on when they clock in and out. *Id.* at 4-5. Specifically, the defendant states:

> Other hourly employees in Kill, Cut, and Converting are paid for production time on what commonly is referred to as a "gang time" system. This system ensures that each employee is paid for the length of production, which is the time it takes for all carcasses to travel on mechanized belts through the department. In such cases, employees are paid production time, that is, from the time the first piece passes their work station until the last piece passes their work station. These employees also may be paid for additional time beyond the production or "gang time" . . .

*Id.* at 5. Additionally, some employees are required to assist with production set-up, clean-up, or other non-production activities. *Id.* at 4. The manner in which these employees are compensated may differ based on each employee's supervisor. *Id.* at 4-5. Further, the defendant generally lists the types of PPE used by the employees in different job categories. *Id.* at 8-12. The defendant contends donning and doffing of certain types of PPE is not compensable, but that it makes a practice of paying gang time employees for additional minutes per shift for certain pre- and post-shift activities. *Id.*

## ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure governs the requirements for establishing and maintaining certification for a class action lawsuit. "In order to obtain class certification, a plaintiff has the burden of showing that the class should be certified and that the requirements of Rule 23 are met." *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994)).

Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)     the class is so numerous that joinder of all members is impracticable;
> (2)     there are questions of law or fact common to the class;

4

      (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

      (4)    the representative parties will fairly and adequately protect the interests of the class.

**See** Fed. R. Civ. P. 23(a).  The United States Supreme Court has summarized the four basic requirements as these: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. ***Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)**. The determination under Rule 23(a) is not perfunctory, "the court must conduct a 'rigorous analysis' to ensure that the prerequisites of Rule 23 are satisfied." ***Elizabeth v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006)** (**quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)**).  "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.'" ***Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986)**.

      "Plaintiffs must meet all requirements of Rule 23(a) and fall within one of the categories of Rule 23(b) to certify their . . . claims as a class action." ***Blades v. Monsanto Co.*, 400 F.3d 562, 568-69 (8th Cir. 2005)** (**citing *Amchem*, 521 U.S. at 614**).  Rule 23(b) allows a class action if (1) there is otherwise a risk of (a) inconsistent adjudications or (b) impairment of interests for non class members; (2) the defendant's conduct applies generally to the whole class; or (3) questions of law or fact common to members of the class predominate and the class action is a superior method for adjudication.  **See** Fed. R. Civ. P. 23(b).

      In addition to the Rule 23(a) and (b) requirements, pursuant to Rule 23(c)(1)(B):  "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  The plaintiffs' propose a class action, pursuant to Fed. R. Civ. P. 23, consisting of:

      All current and former employees of Defendant Tyson's Madison, Nebraska meat processing facility who have been employed by Tyson at any time from March 1, 2004, to the present and are or were paid under a "gang time" compensation system in the Kill, Cut or Conversion Departments.

**See** Filing No. 61 - Motion p. 1.

The plaintiffs contend the putative class members are all subject to the defendant's common policy of requiring employees to perform work without compensation. See Filing No. 62 - Brief p. 13-14. Specifically, the subject employees are required to wear at least some PPE. *Id.* Additionally, the subject employees engage in, at least some of, the following uncompensated activity: donning their PPE, clean themselves and PPE, doffing their PPE, and walking time associated with these other activities. *Id.* The plaintiffs argue that although the defendant disputes whether the practice is a violation of Nebraska law, the system is uniform among production workers at the facility. Specifically, if the defendant pays certain groups of employees additional compensation, such policy remains uniform among the employees and still falls short of full compensation. See *id.* at 13-14. The plaintiffs also contend that although the damages may be different between plaintiffs or difficult to calculate, such issue is not dispositive of the certification decision.

The defendant denies class certification is appropriate in this case. The defendant argues that although all of the putative class members may wear PPE, the type of PPE worn and whether or not such donning or doffing activity is compensable presents individual questions among class members. See Filing No. 66 - Response p. 30-32. The defendant contends the employees wear a variety of PPE and the time taken to don, doff, and walk to various parts of the facility differ for each employee and, perhaps, even for the same employee depending on that employee's assignments and experience. *Id.* The defendant contends the employees are not required to engage in uncompensated work activities. *Id.* at 13-14, 30-32. Specifically, the defendant provides evidence that the defendant adds twenty to twenty-four minutes to certain "gang time" shifts for pre- and post- shift activities. *Id.* at 4-7, 30-31.

The court will review, *seriatim*, each of the requirements the plaintiffs must satisfy with regard to class certification.

## 1.    Rule 23(a) Requirements

### i.    Numerosity

The first prerequisite the plaintiffs must meet under Rule 23(a) is numerosity. ***Amchem***, 521 U.S. at 613. Rule 23(a) requires "the class [be] so numerous that joinder

6

of all members is impracticable." **See** Fed. R. Civ. P. 23(a)(1). Rule 23(a) "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40 class members should raise a presumption that joinder is impracticable"). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001).

"Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. . . . [Further,] where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). Typically, the court may rely on the pleadings, however "it may be necessary for the court to probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met." *Chesher v. Neyer*, 215 F.R.D. 544, 546 (S.D. Ohio 2003) (**citing** *Gen. Tel. Co. of S.W.*, 457 U.S. at 160). A court "may consider reasonable inferences drawn from facts before [it] at the stage of the proceedings." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); **see** *Serfaty v. Int'l Automated Sys., Inc.*, 180 F.R.D. 418, 420 (D. Utah 1998).

In the instant case, there are potentially between 851 and 2000 current and former employees from the Madison, Nebraska, processing facility. **See** Filing No. 1 - Complaint ¶ 14; Filing No. 62 - Brief p. 8; Filing No. 66 - Response p. 3. Each of these employees is a potential class member, particularly because the defendant admits to using the same compensation system, with minor variations over time, for the workers falling under the class definition. The defendant does not dispute numerosity.

After considering the number of persons in the proposed class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and other factors relevant to the practicality of joining all the putative class members, the court finds the plaintiffs satisfy the numerosity requirement. **See** *Paxton v. Union Nat'l Bank*,

688 F.2d 552, 559-60 (8th Cir. 1982); **see also** *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 364 (S.D. Iowa 2008). Based upon the evidence presented, the large number of putative class members justifies class treatment. It is evident a class of this size would promote judicial economy over individual suits, particularly under the circumstances of this case.

### ii. Commonality

Second, the plaintiffs must prove the element of commonality. *Amchem*, 521 U.S. at 613. Rule 23(a)(2) requires there be "questions of law or fact common to the class." **See** Fed. R. Civ. P. 23(a)(2). "Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (**quoting** *Paxton*, 688 F.2d at 561). However, "[t]he rule does not require that every question of law or fact be common to every member of the class." *Paxton*, 688 F.2d at 561. Further, commonality may be shown "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.*; *Perez-Benites v. Candy Brand*, LLC, 267 F.R.D. 242, 247 (W.D. Ark. 2010) (noting the court will determine "whether there is a need for combined treatment and a benefit to be derived therefrom"). "[T]he commonality requirement imposes a very light burden on the Plaintiff seeking to certify a class and is easily satisfied." *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); **see** *Jones v. Casey's General Stores, Inc.*, 266 F.R.D. 222, 227 (S.D. Iowa 2009).

The plaintiffs argue there are common questions of law and fact because the case is based on whether the defendant violated state wage and hour laws when failing to pay hourly employees for all work prior to, during, and subsequent to their shift's production time due to the gang time compensation system. **See** Filing No. 62 - Brief p. 12. In contrast, the defendant argues the actual evidence presented shows the defendant had a uniform policy of paying employee extra minutes beyond the production time, depending on the employees' varying circumstances. **See** Filing No. 66 - Response p. 30. The defendant argues there are wide factual variations among the employees due to their

particular activities including types of PPE worn, equipment used, and supervisor. *Id.* at 30-32. Additionally, the defendant notes the change in its extra pay policy over time, i.e., increasing the amount of extra paid minutes from four to twenty-four, depending on the work assignments and PPE used. *Id.* at 30-31. Finally, the defendant challenges the plaintiffs' factual assertions for lack of sufficient evidence. *Id.* at 30.

As an initial matter, "[t]he court may not consider the factual merits or weaknesses of plaintiffs underlying claims. For purposes of a motion for certification the substantive allegations of the complaint are accepted as true." *Caroline C.*, 174 F.R.D. at 459 n.7 (**citing** *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)) (other internal citations and quotations omitted). "However, the court is required to look beyond the pleadings to documentary evidence submitted by the parties in determining whether the specific requirements for certification have been met." *Caroline C.*, 174 F.R.D. at 459 n.7. Accordingly, the defendant's arguments related to the change in their internal compensation system and whether the defendant is now in compliance with the state laws may be relevant to, but are not dispositive of, the class certification issues.

The court concludes the core of the plaintiffs' suit is based on the same law and common facts. Here, the defendant relies on a uniform labor practice for its Kill, Cut, and Conversion Departments' production employees. The practice results in the employees engaging in activities for which they may not be paid. While the exact amount of time for each employee may vary, the employees are performing nearly identical tasks under nearly identical conditions, despite the variety of job categories. Variation among employees due to the types of clothing worn, equipment used and supervisor does not diminish the nature of the general compensation system. By the same token, the defendant's compensation for extra minutes remains based on generalities, i.e., a particular number of minutes for a particular assignment, rather than based actual time spent by the employee. Based upon the evidence presented and the parties' pleadings, the undersigned magistrate judge finds the commonality requirement has been satisfied as to the class as a whole.

### iii.    Typicality

Third, the class representatives have the burden to show typicality of their claims in relation to the other putative members of the class. *Amchem*, 521 U.S. at 613. Rule 23(a) requires a named plaintiff to have claims or defenses which "are typical of the claims or defenses of the class." **See** Fed. R. Civ. P. 23(a)(3). The Eighth Circuit, "long ago defined typicality as requiring a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Chaffin v. Rheem Mfg. Co.*, 904 F.2d 1269, 1275 (8th Cir. 1990) (internal quotations and citations omitted). "[F]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); **see** *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). The burden to establish typicality is "fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer*, 64 F.3d at 1174. However, the plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member. *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004) (denying class certification for denial of disability insurance benefits).

The plaintiffs contend the claims of the named plaintiffs are typical of the whole class and the named plaintiffs' allegations are not based on conduct unique to them but rather on a compensation system which affects all class members. **See** Filing No. 62 - Brief p. 13-14. The defendant denies that typicality exists in this case because the claim analysis will require an individualized fact-intensive inquiry. **See** Filing No. 66 - Response p. 30. In addition, the defendant describes the current named plaintiffs' assignments to show that these plaintiffs worked in only three, rather than all 766, discrete job categories. *Id.* at 31. In any event, the standard additional compensation, even if it is different for each job assignment, is evidence that the defendant treats each of the gang time employees with a standard practice regardless of individual differences between employees within the same assignments.

10

It is true "[a] proposed class representative is not adequate or typical if it is subject to a unique defense that threatens to play a major role in the litigation ." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir.1999) (citing cases).  By the same token, it is inappropriate to certify a class "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  However, "differences in the claimed damages or the availability of certain defenses do not defeat typicality, as long as the class claims are generally based on the same legal or remedial theory." *Morris v. Wachovia Sec. Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004).  The class representatives must allege only "that all class members suffered the same or similar injuries and that the representatives are not claiming a different set of injuries." *Perez-Benites v. Candy Brand*, LLC, 267 F.R.D. 242, 247 (W.D. Ark. 2010).

After reviewing the arguments in light of all the evidence presented, the court finds the employees do not present unique arguments with regard to the types of activities that are allegedly unfairly uncompensated.  Whether the employees are engaging in compensable pre- and post-shift activities will not depend on how much time an individual employee takes to don an apron.  Instead, the plaintiffs all rely on non-unique general allegations that particular categories of activities are compensable and argue the defendant fails to compensate for these activities.  These general activities are not based on particular departments, job assignments, supervisors, or the time it takes a particular employee to perform uncompensated activities.  At a basic level, the claims and arguments made by the named plaintiffs are typical of the proposed class members.  The critical payment system governing which activities are compensated is not unique to a particular plaintiff or to the named plaintiffs.  The defendant's relevant employees are compensated based on the gang time system, which, as alleged by the plaintiffs, excludes payment for certain compensable work activities, despite the defendant's payment of additional minutes to some workers.  Further, it is for the fact finder to determine whether the additional minutes fairly and legally compensate the plaintiffs for their time spent.  Accordingly, the plaintiffs have met their burden of showing their claims are typical of those of the putative class.

### iv.    Adequacy of Representation

The fourth prerequisite a plaintiff must meet under Rule 23(a) for class certification is adequacy of representation.  *Amchem*, 521 U.S. at 613.  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  **See** Fed. R. Civ. P. 23(a)(4).  "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel."  *Paxton*, 688 F.2d at 562 (**citing** *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)).

The plaintiffs argue they and their counsel will adequately protect the interests of all proposed class members because the named plaintiffs have the same interests as all putative class members in recovering wages.  **See** Filing No. 62 - Brief p. 14-15.  The defendant does not dispute the adequacy of counsel based on counsel's experience.  **See** Filing No. 66 - Response p. 27.  However, the defendant questions the representation of the named plaintiffs for the failure of some of them to participate in discovery and because they did not work in all, or at least more, of the various departments.  *Id.* at 27-29.  For these reasons, the defendant argues the named plaintiffs fail to prove common interests with other members of the class.  *Id.*  The plaintiffs counter that the named plaintiffs' interests remain the same as those of the putative class members, despite the length and nature of employment.  **See** Filing No. 69 - Reply p. 11-12.  Further, several plaintiffs, including Manuel Acosta, have cooperated in discovery and assisted counsel with prosecuting this case.  *Id.*

The court has reviewed the evidence presented and finds the plaintiffs have common interests with the proposed members of the class and sufficient interest in prosecuting the matter on behalf of the class.  The plaintiffs' counsel also appears qualified.  Thus, the undersigned magistrate judge finds the plaintiffs and their counsel will fairly and adequately protect the interests of the class, thus meeting the adequacy of representation element under Rule 23(a)(4).

12

2.      **Rule 23(b)(1) Requirements**

For class certification, the plaintiffs must also prove this action may be maintained under Rule 23(b)(1), (2), or (3). *Amchem*, 521 U.S. at 614. The plaintiffs have moved to do so under Rule 23(b)(1) and/or Rule 23(b)(3). Under Rule 23(b)(1), the court must find:

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

See Fed. R. Civ. P. 23(b)(1).

The plaintiffs argue the defendant's compensation system impacts each class member similarly and raises the same questions of law. **See** Filing No. 62 - Brief p. 15-17. There is a risk that if each of the production employees were to litigate separately varying outcomes would result with regard to, for example, the types of activities which are compensable. *Id.* at 16-17. The defendant argues the individualized nature of the damage awards neither amounts to an "incompatible standard of conduct" for the defendant, nor would it impair non-parties from protecting their interests. **See** Filing No. 66 - Response p. 32-35.

The court finds the defendant's uniform pay system affects each employee in the same way, albeit to varying degrees. Further, a determination about whether the pay system is a violation of state statute should be uniform for each plaintiff and the defendant. **See *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396-97 (E.D. Pa. 2001)** ("Certifications under [Rule 23(b)(1)] are common in labor relations cases because defendants often provide 'unitary treatment to all members of [a] putative class [in this] . . . area' and thus the rights of absent 'class member[s] [are often] . . . implicated by litigation brought by other class members.'") (alterations in original). The defendant focuses on the damages awards, which are likely to differ among employees, without

13

adverse impact on the defendant or the class as a whole.  However, the defendant may be subject to differing and incompatible standards of conduct if the outcomes of separate litigation resulted in different definitions of work or compensable activity.  Under such circumstances, the defendant may have to compensate employees working side-by-side differently for the same activity.  Accordingly, class certification under Rule 23(b)(1) appears appropriate.

### 3.    Rule 23(b)(3) Requirements

Under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "The requirements of 'predominance' and 'superiority' are stated in Rule 23(b)(3) in the conjunctive; both must be present for an action to be maintained under that provision."  ***Bryant v. Bonded Accounts Serv./Check Recovery***, 208 F.R.D. 251, 261 (D. Minn. 2000).

### i.    Predominance

As to the first prong of the inquiry, the Supreme Court has ruled the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  ***Amchem***, 521 U.S. at 623 (**citing** 7A Wright, et al., **Fed. Practice & Proc.** § 1777, at 518-19 (2d ed. 1986)).  "In order to 'predominate,' common issues must constitute a significant part of the individual cases."  ***Jenkins v. Raymark Indus., Inc.***, 782 F.2d 468, 472 (5th Cir. 1986).  "Where there is an essential factual link between all class members and the defendants, for which the law provides a remedy, questions of law or fact common to the class exist."  ***D'Alauro v. GC Servs. Ltd. P'Ship***, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citation omitted).  Furthermore, "when one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."  7A Wright, et al., ***supra***, § 1778.

> The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual.  If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades*, 400 F.3d at 566 (internal citation omitted).

The defendant argues individual issues predominate in this case because of different types of PPE and different employee experiences.  **See** Filing No. 66 - Response p. 35-37.  Because of individual variances, the defendant maintains there is no common compensation practice.  *Id.* at 36.  Further, the defendant contends separate issues would require mini-lawsuits.  *Id.* at 37.

However, the court finds the employees do not present unique issues.  In fact, the specific issues raised by the defendant highlight the necessity for a joint trial on these matters.  The types of activities subject to compensation are uniform among the employees without regard to their individual work experiences.  Accordingly, whether the employees are engaging in compensable pre- and post-shift activities will not depend on individual experience or timing.  In this case, common issues are the same in all class members' cases and therefore the same issue "predominates" over their individual cases.  Each case for each class member is about the defendant's common compensation system for activities by production employees at the Madison, Nebraska, facility.  The compensation system remains "common" even though the defendant changed the system over time to include, then increase, compensation above the gang time amounts for some employees based on job category.  Because this same issue is common to all class members, regardless of the differences in individual experiences, the predominance element is satisfied.

ii.     **Superiority**

For the second prong of the Rule 23(b)(3) inquiry, the class action must be "superior to other available methods for the fair and efficient adjudication of the controversy."  **See** Fed. R. Civ. P. 23(b)(3).  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy.  Having to engage in separate threshold inquiries for each class member prior to reaching the common issues does not promote such economy. . . . [It] will create judicial *dis* economy."  ***Estate of Mahoney***, 204 F.R.D. at 161 (**quoting** ***Valentino v. Carter-Wallace, Inc.***, 97 F.3d 1227, 1234 (9th Cir. 1996); ***Smith v. Brown & Williamson Tobacco Corp.***, 174 F.R.D. 90, 94 (W.D. Mo. 1997)).

The plaintiffs contend there is no alternative forum superior to a class action under the facts of this case.  A class action would give hundreds, or thousands, of workers an opportunity to resolve their claims in one lawsuit, as opposed to the same number of individual lawsuits over the same issue.  See Filing No. 62 - Brief p. 18-19.  The plaintiffs assert the modest monetary nature of individual claims would decrease the likelihood of individual lawsuits.  *Id.*  The defendant contends a class action under the circumstances is not superior because of the individualized nature of the claims requiring mini-trials.  **See** Filing No. 66 - Response p. 37-39.  In addition, the defendant argues a class action is not the superior method of determining the plaintiffs' claims because the plaintiffs have the option of proceeding under the FLSA.  *Id.* at 37-39.

The undersigned finds resolution of the claims, at least as to the liability of the defendant to the class members, through a class action would, under the circumstances, be an efficient allocation of judicial resources.  As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendant because the core issue and arguments of each putative class member is the same.  A class action is a superior method of resolution of the issues compared to individual litigation or separate litigation of the state law claims.

In support of the defendant's arguments related to the FLSA, the defendant contends the plaintiffs' FLSA claims are inconsistent with, and show the inferiority of a Rule 23 class action.  The defendant cites a handful of cases in support of the argument.

However, the court finds the reasoning in cases rejecting those arguments to be more persuasive.  See *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 161-64 (S.D.N.Y. 2008).  This is particularly true where, as here, the court determines the FLSA claims do not pre-empt the state law claims.  Although the plaintiffs have not sought conditional certification of the FLSA claims, there may be a number of reasons employees would not opt-in to the action that had nothing to do with a belief they were not actually aggrieved.  See *id.* at 163 (noting "employees may feel intimidated about volunteering to participate in an opt-in collective action").  The *Damassia* court also noted:

> Precisely quantifying these costs-to those wrongly included in class actions, or to those wrongly excluded from collective actions-is not possible, but there is no reason to think that the one will significantly outweigh the other.  Indeed, it may be that in the wage claim context, the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action, insofar as many employees will be reluctant to participate in the action due to fears of retaliation.  Accordingly, the concern about including class members who do not really want to participate in the class deserves little weight in assessing whether a class action is superior to other available methods of adjudication.

*Id.* (internal citation and quotations omitted).

The undersigned finds resolution of the claims, at least as to the liability of the defendant to each individual class member, through a class action would, under the circumstances, be an efficient allocation of judicial resources.  As stated above, resolution of the plaintiffs' claims do not require the individualized scrutiny described by the defendants because the core issue and arguments of each putative class member are the same.  A class action is a superior method of resolution of the issues compared to individual litigation, separate litigation of the state law claims, or an FLSA action alone.  Accordingly, the undersigned magistrate judge will recommend class certification under Rule 23(b)(3).  Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

The  plaintiffs' Motion for Rule 23 Class Certification (Filing No. 61) be granted to include:

All current and former employees of Defendant Tyson's Madison, Nebraska, meat processing facility who have been employed by Tyson at any time from March 1, 2004, to the present and are or were paid under a "gang time" compensation system in the Kill, Cut or Conversion Departments.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.   Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 8th day of December, 2010.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.