# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

Dimas Acosta, *et al.*, individually and on behalf of a class of all others similarly situated,

       Plaintiffs,

v.

Tyson Foods, Inc.,

       Defendant.

CASE NO. 8:08-cv-00086-JFB-TDT

DEFENDANT'S MEMORANDUM IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION ON RULE 23 CLASS CERTIFICATION

Steven D. Davidson
Allison D. Balus
BAIRD HOLM LLP
1500 Woodmen Tower
Omaha, NE 69102-2068
Phone: 401-344-0500

Michael J. Mueller (*pro hac vice*)
Evangeline C. Paschal (*pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K. Street, N.W.
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Attorneys for
TYSON FOODS, INC., DEFENDANT

Dated:  December 22, 2010

## INTRODUCTION

This action arises out of the Plaintiffs' employment at Defendant's meat processing facility in Madison, Nebraska.  Plaintiffs allege that Defendant is violating the Fair Labor Standards Act ("FLSA"),[1] 29 U.S.C. §§ 201 *et seq.,* the Nebraska Wage and Hour Act, Neb. Rev. Stat. §§ 48-1201 to 48-1209, and the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. §§ 48-1228 to 48-1232.  Specifically, Plaintiffs allege that they are not compensated for donning and doffing various types of clothing and protective equipment, cleaning and sanitizing that equipment, walking time, working on knife maintenance equipments, and waiting in line to receive equipment needed for production line activities.

Production operations at the facility are made up of several different areas, including Kill, Cut, and Converting.  *See* Magistrate Judge Thalken's Report & Recommendation ("R&R") (Docket No. 71) at 4.  Those areas are further sub-divided into various departments, each performing a different aspect of production.  *Id.*  In all, the plant employs approximately 851 hourly workers in 36 departments with 766 discrete jobs codes.  *Id.* at 3.  These workers have different tasks and, as explained further below, they wear different protective clothing.  *See id.* at 3-4.  Importantly, Defendant uses a variety of time recording and pay practices, many of which are tailored by supervisors to the needs of the particular unit or job.  *Id.*  Some, but not all, of the pay determinations start with "gang time," which is the amount of time the production line is running on each shift.  *Id.* at 4.  From that baseline, the employees in each unit's—and sometimes each employee's—pay depends on a host of additional factors.  *Id.*  As a result of these differences, while some putative class members may have claims for under-compensation,

---

[1] Plaintiffs have never, however, sought conditional certification of the FLSA claims.  *See* 29 U.S.C. § 216(b).

others may not, and there is no convenient way to ascertain which class members fall into either category.

On June 8, 2010, Plaintiffs filed the instant motion for class certification, after over a year and a half of discovery on class issues. (Docket No. 61). During class discovery, Defendant sought to depose all three named plaintiffs, but two of them failed to appear for their depositions. Balus ¶ 2.

Magistrate Judge Thalken subsequently issued a report in which he recommended that the Court certify a class action under Federal Rule of Civil Procedure 23 for Plaintiffs' claims under the Nebraska Wage and Hour Act and the NWPCA. *See* Docket No. 77. However, his recommendation rests upon six fundamental errors. First, although the Magistrate Judge acknowledges that he was required to "conduct a 'rigorous analysis'" of the Rule 23(a) factors, *see* R&R at 5, he did not do so. Indeed, there is almost a complete lack of citations to the record or case when analyzing most of the factors. Second, the Magistrate Judge erroneously concluded Defendant had a common policy for compensating hourly workers while not addressing the widespread variation in pay practices and equipment worn by employees. Third, certification would be erroneous because the undisputed facts do not meet the commonality or typicality requirements of Rule 23(a)(2) and (3). Fourth, the Magistrate Judge erred in finding Plaintiffs met the adequacy of representation requirement of Rule 23(a)(4) and, indeed, his opinion does not account for the fact that two of the three named plaintiffs failed to appear for deposition. Fifth, the Magistrate Judge erred in finding Plaintiffs met the requirements of Rule 23(b). Sixth, Plaintiffs' state law claims are not amenable to class action treatment because they are inconsistent with the "opt-in" procedure that Congress created for FLSA claims.

## ARGUMENT

**I.    THE MAGISTRATE JUDGE APPLIED THE INCORRECT STANDARD IN CERTIFYING THE CLASS UNDER RULE 23**

A.    The Magistrate Judge Failed To Conduct A "Rigorous Analysis"

Before certifying a class action, the Court is required to conduct a "rigorous analysis" to determine whether the "prerequisites of Rule 23 are satisfied." *Elizabeth M. v. Montenez*, 458 F.3d 779, 786 (8th Cir. 2006) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982)). However, in recommending certification of a class action to adjudicate Plaintiffs' state law claims, the Magistrate Judge abdicated his obligation under Supreme Court and Eighth Circuit precedent to perform such a rigorous analysis in determining whether Plaintiffs had met their burden. A rigorous analysis is particularly needed in this case because Plaintiffs' claims turn upon issues requiring individualized, fact-intensive analyses to determine whether Defendant is liable to any particular employee and, if so, the amount of any damages.

In each section of his opinion discussing the disputed elements of Rule 23(a), the Magistrate Judge's conclusions do not marry with the facts or law. *See* R&R at 9 (commonality), 11 (typicality), and 12 (adequacy of representation). This is insufficient, as a rigorous analysis requires the Court to demonstrate *how* the facts at issue satisfy each of the elements of Rule 23(a), and failure to do so is reversible error. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 81 Fed. Appx. 550, 559 (6th Cir. 2003) (certification was in error where district court failed to demonstrate through rigorous analysis (i) scope of proposed class, (ii) whether named plaintiffs' particular claims made them adequate representatives for class, and (iii) whether claims raised on behalf of class were different from named plaintiffs' individual claims); *Griffin v. Dugger*, 823 F.2d 1476, 1489 (11th Cir. 1987) (district court failed to conduct rigorous analysis, which required factual showing of how each element of Rule 23(a) was satisfied;

*Marion v. Werner Enters.*, No. 8:08CV466, 2009 U.S. Dist. LEXIS 101706, at *4-5 (D. Neb. Sept. 9, 2009) (finding "a determination under Rule 23(a) is not perfunctory" and requires a rigorous analysis), adopted by *Marion v. Werner Enters.*, No. 8:08CV466, 2009 U.S. Dist. LEXIS 101687 (D. Neb. Nov. 2, 2009).

In addition, the Magistrate Judge could recommend certification only by disregarding his own statement of pertinent facts, which establish a wide variety of compensation practices. Namely, as recognized by the Magistrate Judge, there is evidence that the putative class members are subject to different compensation and clothing policies and practices depending on their departments and jobs. These different policies and practices are crucial to determining the viability of a claim for under-compensation, and the widespread variation among them thus precludes class certification. *See Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 966 (W.D. Mich. 2009) (denying certification, in part, because variation in equipment worn by employees and their donning and doffing times would lead to "great disparities in the liability issue alone"). Yet, the Magistrate Judge relied upon a generalized notion of "gang time" as a common policy, which is both factually inaccurate and legally insufficient because Defendant compensates employees in a number of ways other than, or that modify, gang time.

B.   The Magistrate Judge Erred By Not Considering The Merits or Weaknesses Of Plaintiffs' Underlying Claims

At the outset of his analysis, the Magistrate Judge stated that "[t]he court may not consider the factual merits or weaknesses of Plaintiff's underlying claims." R&R at 9 (quoting *Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974)). However, when considering class certification under Rule 23, a court must "perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always,

require looking behind the pleadings to issues overlapping with the merits of the underlying claims." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir.), *cert granted, in part*, 2010 U.S. LEXIS 9588 (U.S., Dec. 6, 2010).  Moreover, a rigorous analysis "must involve consideration of what the parties must prove" to prevail.  *Elizabeth M*, 458 F.3d at 786.

Indeed, the trend among the Circuits is to demand that plaintiffs establish each fact necessary to meet Rule 23's requirements by a preponderance of the evidence when seeking to certify a class.  *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008); *see also Am. Honda Motor Co., v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) ("a district court must make the necessary factual and legal inquiries and decide all relevant contested issues prior to certification"); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 228 (5th Cir. 2009) (issue of predominance must be established by a preponderance of the evidence); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F. 3d 196, 202 (2d Cir. 2008) (holding that "the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[t]he factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.").  *Eisen*, which the Magistrate Judge cites, does not necessarily preclude any inquiry into the merits.  *Dukes*, 603 F.3d at 582 ("Courts . . .have myopically invoked *Eisen* to avoid considering facts properly relevant to the Rule 23 determination because the facts happen to be relevant to the later merits inquiry as well."). Indeed, the Supreme Court recently granted certiorari in *Dukes* and will consider how Rule 23(b) interrelates with Rule 23(a), meaning that it will likely evaluate the level of factual scrutiny required at the Rule 23 class certification stage.  *See* 2010 U.S. LEXIS 9588.  In its petition for certiorari Wal-Mart highlighted the divide between the Ninth Circuit and other Circuits on the

appropriate level of analysis.  Given that the Ninth Circuit focused on *Eisen* in analyzing this

issue in *Dukes*, the Supreme Court will have the opportunity to clarify the applicability of *Eisen*

in the wake of the emerging trend in the Circuits cited above.  *See Dukes*, 603 F.3d at 582-96.

Therefore, this recent development calls into question the Magistrate Judge's reliance on *Eisen*,

and, at the very least, supports delaying a final decision on class certification until the Supreme

Court has clarified the appropriate level of factual analysis required at this stage.

In any event, district courts in this Circuit *already* have applied this same standard to

deny class certification where the plaintiff did not establish "by a preponderance of the evidence

that she [could] make a prima facie showing of each element of the underlying claim with

common evidence."  *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 240 n.7 (S.D. Iowa 2010);

*Mooney v. Allianz Life Ins. Co.*, No. 06-545, 2009 U.S. Dist. LEXIS 15626, at *13 (D. Minn.

Feb. 26, 2009) (applying preponderance of evidence standard in determining whether class or

individual issues predominate); *see also Gries v. Standard Ready Mix Concrete*, L.L.C., 252

F.R.D. 479, 482 (N.D. Iowa Aug. 2008) ("To determine whether the requirements of Rule 23(a)

have been satisfied, the court must examine the factual basis for the plaintiff's claims … .").

These recent decisions demonstrate that the Court should take a cautious, restrictive approach to

class action certification.  In other words, it should not presume the requirements for class

treatment are met without considering all of the evidence presented, particularly where, as here,

individual issues will predominate in the merits inquiry.

Despite this case law to the contrary, the Magistrate Judge made a limited factual inquiry

in this case.  As shown below, the facts of this case demonstrate that a *proper* analysis must

result in a conclusion that the state-law claims are *not* capable of class treatment.  This is

6

particularly so with regard to the commonality and typicality requirements of Rule 23(a), but also with regard to the Rule 23(b) analysis.

## II.   THE MAGISTRATE JUDGE ERRED IN FINDING DEFENDANT HAS A COMMON POLICY

### A.   Defendant Does Not Have A Common Policy Applicable To All Putative Class Members

The Magistrate Judge found that Plaintiffs satisfied the requirements of Rule 23(a) based on his conclusion that Defendant's use of "gang time" means it has a common compensation policy. *See* R&R at 9, 11("uniform labor practice" and "common payment system"). However, Defendant's only policy and practice is to pay hourly production employees for the *at-issue, non-production activities* through the additional minutes paid outside of the gang time system. The following three subsections illustrate in detail that Defendant does not have a "uniform labor practice" or "common payment system," but rather pays its employees based on a wide variety of factors.

#### 1.   An employee's pay depends on a wide variety of factors

For most employees, gang time pay has represented only part of their compensation as, throughout the relevant time period, Defendant has had a policy to pay for certain donning- and doffing-related activities. An individual employee's compensation varies depending on the payment method used to calculate their time, the equipment he or she wears, his or her job position, whether he or she uses knife. Indeed, some of these factors may even vary on a daily basis, and the pay practices at the Madison facility have changed several times during the proposed class period. The following three categories show that a large number of employees have received compensation for time beyond work on the production line, and the amount of such compensation has varied.

First, hourly production employees at the Madison facility are compensated through a variety of payment methods.  Some employees are paid either from a pre-determined start time or when they clock in until either a pre-determined end time or until they clock out.  Curtis ¶ 6; DeLancey ¶ 8; Demmel ¶ 6; Frauendorfer ¶ 7; Hazelton ¶ 7; Hoffman ¶ 5; Huisman ¶ 6; Johnson ¶¶ 6, 7; Jorgensen ¶¶ 6, 7; McFarland ¶ 7; Meyer ¶ 7; Moman ¶¶ 6-8; Mostek ¶ 6; T. Zerbe ¶ 6.  The manner in which Defendant compensates some employees may differ based on each employee's supervisor.  R&R at 4.  For example, depending on their supervisor, employees who arrive early may be paid from either the time they clock in or a pre-determined start time.[2] Curtis ¶ 7; Hazelton ¶ 7; Moman ¶ 8; Mostek ¶ 5; Widhalm ¶ 4; T. Zerbe ¶ 7.  Similarly, supervisors may approve paying employees who assist in cleaning up until they clock out or record the time when employees finish and leave the department, meaning those employees perform some or all required post-shift activities on paid time.  Guerrero Dep. 19:1-16; Huisman ¶ 6; Jorgensen ¶ 7; Meyer ¶ 7; McFarland ¶ 7; Moman ¶¶ 9-11; Widhalm ¶ 4.  While some employees are paid through gang time, even those employees may be paid for additional time beyond gang time, as described above. Unger Dep. 11:12-24.

Second, the amount of time that a specific employee spends donning and doffing on a given day varies depending on what equipment he or she was wearing for the position that he was assigned to on that day.  Ramirez de Reinaga Dep. 37:23-38:3; 48:13-20.  In some departments, employees rotate positions during the week or during a particular workday.  Ramirez de Reinaga Dep. 18:4-7; Mostek ¶ 16.  The required clothing and equipment these employees use and wear varies depending on the job position of the employees at any particular

---

[2] In at least one department in the Kill area, the majority of the 23 employees in the department are paid from a scheduled start time until punch out time.  Hoffman ¶¶ 4, 5.

8

time.  Ramirez de Reinaga Dep. 17:16-19; Mostek ¶ 16.  Because there are 36 departments and

766 job codes at the Madison facility, the required clothing and compensation of employees can

vary greatly.  R&R at 3.

Third, Defendant's pay practices have varied greatly throughout the class period.  Prior to

January 2007, all employees working in departments where knives were used received four

minutes per shift to compensate knife users for time spent changing additional protective

clothing.  Unger Dep. at 43:23-44:2.  Starting in January 2007 until February 2010, the

additional paid time that hourly production employees ranged from zero to eight minutes per

shift depending on the employee's job position, with knife users receiving a range from four and

eight minutes per day in addition to their other compensation.  *Id*. at 43:10-17 Kimbro ¶ 16-17.

Notably, the amount of additional time paid varied by job code, which accounted for the

different types and amount of clothing that an employee wore in different jobs.  *Id*. ¶ 17.  In

February 2010, Defendant again altered its policy of paying for pre- and post-shift and break-

time activities, resulting in all hourly production employees receiving at least 20 paid minutes

each shift for pre- and post-shift activities in addition to the pay they receive for production time.

Unger Dep. 19:15-20:3; Fenton ¶ 16.  In addition to the 20 minutes of paid, non-production time

that Defendant started paying February 2010, some hourly production employees receive

additional minutes of paid time for donning and doffing-related activities.  Unger Dep. 19:15-

20:3, 21:5-22-9; Fenton ¶ 18.  This additional paid time ranges from one to four minutes per

shift, depending upon the job code and the protective clothing required for that job position.

Unger Dep. 21:5-22-9; Fenton ¶ 18.

2.      <u>Different employees and jobs have different clothing and donning and doffing times</u>

The record evidence also reveals enormous differences in the protective clothing that employees are required to wear on the job, meaning there is a broad divergence in the amount of time spent donning and doffing by employees.  The following shows how widely the type of clothing and equipment may vary:

- *Hardhat, hairnet, beardnet, earplug*:  Most employees must wear these items, but some employees in Packaging are required to wear only a hardhat and earplugs. Jarchow Dep. 63:16-64:1

- *Shoes*:  Most employees can wear their own slip resistant, closed-toe shores or rubber boots, and only some are required to wear steel-toed boots.  Acosta Dep. 15:14-18; Flores Dep. 37:9-11; Gonzales Dep. 20:2-17; Jarchow Dep. 32:18-25, 43:5-22; Mostek ¶ 8.

- *Whites*:  Employees in the Kill area are provided a white shirt and pants, but some are not required to wear whites.  Jarchow Dep. 36:20-37:5, 63:12-15; Johnson ¶ 8. Employees in the Converting and Cut area are not required to wear any whites. Jarchow Dep. 36:23-37:2.

- *Safety glasses:* Some, but not all, employees are required to wear safety glasses. Jarchow Dep. 36:23-37:2; Curtis ¶ 9; Moman ¶ 4.

10

- *Aprons & sleeves* are generally worn at the employees discretion, but are required for a few positions. Wilson ¶¶ 4, 5, Muller ¶ 3, Vasquez ¶ 4, L. Reynolds ¶ 2, Phommyvong  ¶ 4; *see also* Comstock Dep. 45:1-6.[3]

Employees store their required and optional clothing and equipment at the plant, with the exception of steels, hardhats, and rubber and steel-toed boots (if required), which they sometimes wear to and from the plant.  Jarchow Dep. 63:5-11; DeLancey ¶ 27; Frauendorfer ¶ 20; Hoffman ¶ 22; Huisman ¶ 16; Jorgensen ¶ 19; Meyer ¶ 18; Moman ¶ 3.  Many employees put on or remove some or all of their required items while walking to or from the production floor.  Acosta Dep. 55:5-56:5; Fernandez Dep. 23:23-24:1; McFarland ¶ 25; G. Zerbe ¶ 6; T. Zerbe ¶ 30.

   3. Pre- and post shift activities differ depending on the job and employee

In addition to the donning and doffing activities, some employees engage in other pre-and post-shift activities, which may vary depending on the department, job position, and employee preference.  Some employees must dip certain clothing and equipment, including their knives, and non-fabric protective hand and arm clothing in a sanitizing solution before beginning production work.  Andrade Dep. 73:3-74:9; Curtis ¶  19; DeLancey ¶ 25; Demmel ¶ 8; Hazelton ¶ 21; Hoffman ¶ 25; Huisman ¶ 17; Johnson ¶ 30; Jorgensen ¶ 20; McFarland ¶ 19; Meyer ¶ 18; Mostek ¶ 23.  However, some employees are not required to dip any clothing or equipment before the start of the shift.  Fernandez Dep. 23:13-19; Frauendorfer ¶ 21.

At the end of the shift, some employees must rinse certain clothing and equipment, including their knives and related equipment at one of several wash nozzles in the production area.  Andrade Dep. 86:20-22; Hazelton ¶ 21; Huisman ¶ 24; Johnson ¶ 35; Jorgensen ¶ 27;

---

[3] Knife users also wear additional items, such as mesh gloves and scabbards.  However, the compensability of these items is not at issue; Tyson already pays for these "unique" items

Meyer ¶ 26; Soto ¶ 20.  Some team members regularly start to wash their clothing and equipment while the production line is running.  Meyer ¶ 26.  However, while some team members are required to dip their clothing or equipment at the end of the shift, others are not required to do so. Curtis ¶ 19; DeLancey ¶ 25; Demmel ¶ 8; Frauendorfer ¶ 21; Hazelton ¶ 21; Moman ¶ 46.

      B.    <u>Even if Defendant Had A Common Policy, Certification Should Be Denied</u>

Clearly, the undisputed facts described above show that Defendant does not have a common compensation policy.  However, even if Defendant had a common policy, the Magistrate Judge still did not have a basis for recommending certification because doing so would require individualized inquiries to determine if the policy, as applied to a particular individual, supports a claim for undercompensation.  Namely, to the extent Plaintiffs' claims are that Defendant has not followed a common compensation policy or that such payments have not fully compensated employees, these allegations of a *deviation* from policy will necessarily vary from plaintiff to plaintiff, requiring individualized proof for purposes of liability.  *See Pacheco*, 671 F. Supp. 2d at 966 ("[B]ecause there is a formal policy to pay employees for donning and doffing activities, any failures to follow that policy will be unique to specific departments and supervisors."); *Thompson v. Speedway SuperAmerica LLC*, No. 08-1107 (PJS/RLE), 2008 U.S. Dist. LEXIS 115050, at \*18 (D. Minn. Aug. 21, 2008) (representative action inappropriate where plaintiffs could not show corporate policy resulted in failure to pay for compensable activities), adopted by *Thompson v. Speedway SuperAmerica LLC*, No. 08-1107 (PJS/RLE), 2009 U.S. Dist. LEXIS 3816 (D. Minn. Jan. 20, 2009) (where alleged practice of failing to pay overtime was contrary to defendant's stated policy, the "individualized nature" of the plaintiffs' claims made the case "inappropriate for certification").

---

through the use of the "K code" discussed above.

12

The district court's decision denying certification of plaintiffs' claims in *Pacheco* establishes this point.[4]  671 F. Supp. 2d at 966.  Like Tyson, the defendant in *Pacheco* had a policy designed to provide employees with varying amounts of additional paid time for donning and doffing at the beginning of their shift and during their meal period.  *Id*. at 962.  Some *Pacheco* plaintiffs claimed that the defendant did not adhere to its policy and, thus, did not pay them for donning and doffing.  *Id*.  Plaintiffs claimed that it was this failure to follow the policy that provided them with common claims.  *Id*.  In denying certification, the *Pacheco* court noted that the plant employed over 500 production workers and that each of the departments "has different requirements for protective equipment" and "[s]ome of the protective equipment is required and some is optional."  *Id*. at 963.  The *Pacheco* court recognized that the plaintiffs "put on different items, at different times, in different places, all depending on their job duties and their own personal practices and preferences."  *Id*. at 966.  These factual differences led the *Pacheco* court to deny certification based on "great disparities in the liability issue alone," and that any failure to follow the policy to pay for donning and doffing activities would be based on the unique circumstances of each individual plaintiff's employment.  *Id*.

Here, the overwhelming evidence shows that Defendant compensated employees for donning and doffing and related activities based on the clothing and equipment required for their particular job position and, since 2007, for the different walking distances to their departments.  To the extent Plaintiffs argue that the method of payment failed to compensate hourly production employees for any time performing such activities, any such inquiry requires individualized proof.  Specifically, it requires an analysis of what position(s) an employee rotated into that day,

---

[4] Although *Pacheco* analyzed FLSA collective action certification, the facts are analogous to the present case and the same rationale applies to the determination of whether state statutory claims

what equipment they were required to wear, what additional equipment they chose to wear, how long it took to don and doff that equipment, the distance to their department, and whether the minutes paid matched the time that it reasonably took to perform those activities.  As in *Pacheco*, this individualized inquiry creates irreconcilable disparities on the issue of liability that cannot be resolved on a class-wide basis.  Thus, even if Defendant did have a common policy, the Magistrate Judge should not have recommended certification.

## III.   THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS' CLAIMS SATISFIED THE REQUIREMENTS OF COMMONALITY AND TYPICALITY

Plaintiffs had the "the burden of showing that the class should be certified and that the requirements of Rule 23 are met."  *Coleman v. Watt*, 40 F.3d 255, 258-59 (8th Cir. 1994).  Rule 23(a) contains two distinct subsections—commonality and typicality—each of which must be satisfied.  *See* Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  The Magistrate Judge based his recommendation that Plaintiffs had met the requirements of commonality and typicality on his conclusion that Defendant had a common policy regarding the compensation of its hourly employees at the Madison facility.

However, because Defendant did not have such a common policy, there is no basis for the Magistrate Judge having found that Plaintiffs satisfied the commonality and typicality requirements of Rule 23(a).  *See Zapata v. IBP, Inc.*, 167 F.R.D. 147, 160 (D. Kan. 1996) (finding plaintiffs could not satisfy typicality element for class certification where they failed to identify an unlawful company-wide practice or policy); *Pacheco*, 671 F. Supp. 2d at 960 (representative action inappropriate where plaintiffs did not provide evidence of a common unlawful decision, policy or plan); *Thompson*, 2008 U.S. Dist. LEXIS 115050, at *16

---

of unpaid compensation should be allow to proceed as a representative action.

(representative action inappropriate where plaintiffs could not show corporate policy resulted in failure to pay for compensable activities).  Indeed, Plaintiffs' proposed class does not meet the commonality or typicality elements because Plaintiffs' claims are not common or typical of the class.  For example, to state a claim under the NWPCA, Plaintiffs must show that Defendant failed to pay "'compensation for labor or services rendered by an employee, … when previously agreed to and conditions stipulated have been met by the employee.'" *Pick v. Norfolk Anesthesia, P.C.*, 276 Neb. 511, 516, 755 N.W. 2d 382, 386 (Neb. 2008) (quoting NEB. REV. STAT. § 48-1229(4) (Supp. 2007)).  Here, other than Tyson's policy to pay employees additional minutes depending on the employees' varying circumstances, there is *no* evidence of a uniform policy or agreement.

A.    Plaintiffs' Claims Fail To Satisfy The Commonality Requirement Of Rule 23(a)(2)

The Magistrate Judge erred in finding Plaintiffs satisfied the commonality requirement under Rule 23(a)(2), which requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("not every common question . . . will suffice [to show commonality]" because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality.").  His recommendation regarding commonality rested critically on the assumption that "the defendant relies on a uniform labor practice for its Kill, Cut and Conversion departments' production employees" that "results in the employees engaging in activities for which they may not be paid."  R&R at 9.

However, as shown above, the undisputed record establishes that gang time is *not* a uniform pay system, but simply a baseline from which an individual's compensation is adjusted depending on department and job-specific factors, such as job duties and protective-wear

requirements. *See* R&R at 2-4. There are nearly 851 employees at the plant, who fall into 766 discrete job codes and are subject to materially different pay practices and protective clothing requirements. The result is a divergent amount of time and effort involved in donning and doffing that results in non-uniform pay. *See id.* at 3-4. Because Defendant often pays employees for time in which they are not performing production work, many of them receive compensation that may fully cover their donning and doffing time.

Commonality does not exist where there are "factual disputes as to a number of the employees regarding both liability and damages," the employer's compensation practices varied over time and depending on an employee's assignments. *See Marion*, 2009 U.S. Dist. LEXIS 101706, at *4-5. Here, the majority of Plaintiffs will have claims that are widely divergent from other Plaintiffs, requiting factual inquiries into the time of their tenure, jobs worked, and supervisors. Yet, despite the varying pay practices among departments and jobs that affect employees differently, the Magistrate Judge incorrectly concluded that compensation practices were uniform across the plant and did not perform the a sufficient inquiry into whether Plaintiffs satisfied the commonality requirement.

B.    Plaintiffs' Claims Fail To Satisfy The Typicality Requirement Of Rule 23(a)(3)

The Magistrate Judge also erred in concluding that Plaintiffs' claims are typical of the entire class under Rule 23(a)(3). "Careful evaluation is necessary because typicality . . . [is] necessary to comport with the requirements of due process." *S & S Forage & Equip. Co. v. Up North Plastics, Inc.*, No. Civ. 98-565 2002 WL 31718409, at *2 (D. Minn. Nov. 21, 2002) (citing *In re South Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 418 (M.D. La. 1980)). As the Magistrate Judge correctly noted, "plaintiffs cannot show typicality where the question of liability can only be ascertained on an individualized inquiry for each class member." R&R at

10 (citing *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1004-05 (8th Cir. 2004));
*see also Elizabeth M.*, 458 F.3d 787 (typicality not established when proving liability "requires
individualized inquiry"). Unfortunately, the Magistrate Judge did not adhere to the standard that
he articulated. Namely, he did not consider that employees wear different types of equipment,
and the type and extent of such equipment varies depending on the employee's job assignment
and whether it is optional or mandatory. *See* R&R at 3 ("Whether the employees are engaging in
compensable pre- and post-shift activities will not depend on how much time an individual
employee takes to don an apron.").

However, the law dictates that Magistrate Judge should have considered these variances
because they show that certifying the class would require individualized inquiry as to each
Plaintiff's claims. Indeed, "the liability of defendant depends on whether defendant failed to pay
a particular plaintiff for compensable time spent performing donning-and-doffing activities."
*See Lugo v. Farmer's Pride*, No. 07-0749, 2010 U.S. Dist. LEXIS 88139, at * 36 (E.D. Pa., Aug.
25, 2010) (denying plant-wide certification because employees did not suffer under-
compensation according to a "single decision, policy or plan" applicable to all the employees,
"but rather that defendant's policies and practices impacted individual plaintiffs in individual
ways.").[5]

Moreover, the Magistrate Judge should have considered that named plaintiffs are not
typical of the class because none of them had ever worked in the Kill area during the class
period. *See* R&R at 11 ("At a basic level, the claims and arguments made by the named
plaintiffs are typical of the proposed class members."). Indeed, faced with similar facts, this

17

Court held that the named plaintiffs failed to meet their burden of showing their claims were typical of those of the putative class members because the plaintiffs' state law claims, including their NWPCA claim, required individualized factual inquiries into the circumstances surrounding each employee's claims for unpaid wages and benefits. *See Marion*, 2009 U.S. Dist. LEXIS 101706, at *5. Here, as in *Marion*, Plaintiffs cannot meet the typicality requirement of Rule 23(a)(3) on their NWPCA claim because each putative class member will have a different amount of claimed time for the activities at issue; and there will be individual questions about whether the various amounts of time and compensation practices applied by Defendant adequately compensated such hourly production employees.

Therefore, because the Magistrate Judge did not acknowledge that variance in donning and donning times is relevant and would result in the need for individualized inquiries, this Court should not adopt his recommendation that Plaintiffs met the typicality requirement for class treatment under Rule 23. *See In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 364-66 (S.D. Iowa 2008); s*ee also Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986).

## IV.   THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS MET THE ADEQUACY OF REPRESENTATION REQUIREMENT

The Magistrate Judge likewise erred in concluding that Plaintiffs satisfied the adequacy of representation requirement of Rule 23(a)(4). R&R at 12. "Seeking to represent a large group of people as a class representative in a lawsuit is a very heavy responsibility … and the court should allow such representation only upon a firm foundation that the named plaintiffs are

---

[5] In a recent order, the district court in *Lugo* allowed a subclass of *one* shift in *one* department to be tried collectively. *See Lugo*, No. 07-0749, Order Granting Partial Collective Action for Trial, Dec. 9, 2010 (Docket no. 505) (available on PACER).

willing and [] able to shoulder that burden." *Clayborne v. Omaha Pub. Power Dist.*, 211 F.R.D. 573, 597 (D. Neb. 2002) (citations omitted) (alteration in original).  Here, two of the three named plaintiffs—Luis Montoya and Martin Hinojosa—demonstrated their inadequacy based on their failure to cooperate in discovery by failing to appear for their noticed depositions.  *See id.*; *see also* Balus ¶2.  As the Eighth Circuit has noted, "a named plaintiff who lacks the desire to vigorously pursue the interests of the potential class members is not a fair and adequate class representative of the class." *Rainy Lake One Stop, Inc., Marigold Foods, Inc. (In re Milk Prods. Antitrust Litig.)*, 195 F.3d 430, 437 (8th Cir. 1999); *see also Koss v. Wackenhut Corp.*, No. 03 Civ. 7679 (SCR), 2009 U.S. Dist. LEXIS 34846, at *23 (S.D.N.Y. Mar. 30, 2009) (finding class representatives inadequate based, in part, on their failure to appear for scheduled depositions); *In re Storage Tech. Corp, Sec. Litig.*, 113 F.R.D. 113, 118 (D. Colo. 1986) (finding plaintiffs' failure to appear for their depositions "is a sufficient basis for this court to conclude that these plaintiffs would not adequately represent the class"); *Martin v. Arkansas Arts Ctr.*, No. LR-C-77-5, 1979 U.S. Dist. LEXIS 11579, at **14-15 (E.D. Ark. June 20, 1979) (whether class representatives have aided in discovery is especially probative of plaintiffs' willingness to see the case through and act as adequate representatives).

Moreover, the one named plaintiff, Manuel Acosta, who actually appeared for his deposition is clearly an inadequate class representative.  During the less than three years he worked at the facility, Acosta worked in only one of the 766 job positions, in only one department of the 36 departments and in only one area of the three areas of the facility.  *See* R&R at 12.  Moreover, Acosta's only job at the facility was a non-knife position, meaning he had less clothing and equipment to don, doff and wash.  Because he spent less time on such activities, Acosta's alleged claim for unpaid compensation will be much weaker than the claims

19

of other class members, and, indeed, he may not have a claim at all for under-compensation. Lastly, Acosta's employment ended in 2006, before either of the two changes in the facility's compensation system that added paid time for the activities at issue. Acosta Dep. 14:1-4. In contrast to Acosta, the putative class is composed of members who could have held hundreds of jobs over six years. Thus, if Acosta is the only remaining named plaintiff in this action, the types of job that he held are too few and his tenure at the facility too short for him to adequately represent such a class. *See Robinson v. Sheriff of Cook County*, 167 F.3d 1155, 1157 (7th Cir. Ill. 1999) (class representative's weak claim is independent reason to doubt adequacy of representation); *O'Neal v. Wackenhut Servs., Inc.*, No. 3:03-cv-397, 2006 U.S. Dist. LEXIS 34634, at *60 (E.D. Tenn. May 25, 2006) (finding named plaintiffs inadequate class representatives, in part, because "the unique circumstances" of their claims made them "significantly weaker than claims of many potential class members").

The Magistrate Judge gave limited recognition to the problems raised by Defendant with regard to the three named Plaintiffs. *See* R&R at 12. He merely stated that the named plaintiffs have "common interests" and "sufficient interest in prosecuting the matter on behalf of the class" − a conclusion that is completely rebutted by the failure of two of them to participate in discovery. Simply put, the Magistrate Judge erred in finding the named plaintiffs are adequate representatives.

## V.   THE MAGISTRATE JUDGE ERRED IN FINDING PLAINTIFFS MET THE REQUIREMENTS OF RULE 23(b)

The Magistrate Judge also erred in finding that Plaintiffs satisfied one of the subsections of Rule 23(b). *See Blades v. Monsanto Co.*, 400 F.3d 562, 568 (8th Cir. 2005) (citing *Amchem Prods., Inc.*, 521 U.S. at 614). The Magistrate Judge recommended certification under both

subsections (b)(1) and (b)(3) of Rule 23.  However, Plaintiffs failed to meet the requirements of either of these subsections.

A.    Plaintiffs Have Not Satisfied Rule 23(b)(1)

To maintain a class action under Rule 23(b)(1), Plaintiffs must demonstrate that the prosecution of separate actions by the class members "would create a risk of":

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Courts have repeatedly held that Rule 23(b)(1) is generally inappropriate for wage-and-hour claims, particularly when, as here, each employee's entitlement to compensation will depend upon the unique circumstances of his or her job situation.  "[C]lass certification under [Rule 23](b)(1) should properly be confined to those causes of action in which there is a *total absence of individual issues*."  *McHan v. Grandbouche*, 99 F.R.D. 260, 266 (D. Kan. 1983) (emphasis added).  *See also Bouaphakeo v. Tyson Foods, Inc.,* 564 F. Supp. 2d 870, 907-08 (denying class certification in donning and doffing case under Rule 23(b)(1) because of individualized factual issues raised by state law claims); *Gieske v. First Horizon Home Loan Corp.*, No. 04-2511-CM, 2007 WL 437792 (D. Kan. Feb 6, 2007) (same); *Horowitz v. Pownall*, 105 F.R.D. 615, 618 (D. Md. 1985) (certification under Rule 23(b)(1) only proper where "there is a total absence of individual questions"); *In re Home-Stake Prod. Co. Sec. Litig.*, 76 F.R.D. 351, 376 (N.D. Okla. 1977) (same); *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 64 F.R.D. 43, 53 (D. Del. 1974) (same); *Tober v. Charnita, Inc.*, 58 F.R.D. 74, 81 (M.D. Pa. 1973) (same).

Here, the abundance of distinct legal and factual issues relevant to each putative class member makes this matter unsuitable for certification under Rule 23(b)(1).  Moreover, the variability of factual and legal issues ensures that there is no risk of inconsistent verdicts or that any individual verdict would, as a practical matter, prejudice any other potential plaintiff.

In fact, it is the Magistrate Judge's proposed grouping of dissimilar claims that threatens to prejudice the interests of Plaintiffs whose claims are factually distinct.  Notably, *none* of the named Plaintiffs have ever worked in the Kill area; thus, they likely have no knowledge about any of the activities or job codes in that area.  *See* R&R at 6.  The facts clearly show the pay practice at Madison has varied over the years, varies by department, and does not constitute a common pay system.  Litigating the claims under a loosely defined common pay system, which in practice is not common for a significant number of employees, poses a risk that evidence for absent plaintiffs will be disregarded in an effort to standardize claims.

B.     Plaintiffs Have Not Satisfied Rule 23(b)(3)

The Magistrate Judge likewise erred in concluding that the requirements of Rule 23(b)(3), known as the superiority requirement, are satisfied.  Under Rule 23(b)(3), Plaintiffs must demonstrate "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy."  "The predominance inquiry is 'more demanding than the commonality requirement of Rule 23(a)' and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'"  *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301-02 (5th Cir. 2003)); *see Bowe v. PolyMedica Corp. (In re Polymedica Corp. Sec. Litig.)*, 432 F.3d 1, 4 n.5 (1st Cir. 2005); *In re Warfarin*

*Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004).  For potential classes under Rule 23(b)(3), the Rules "invite[] a close look at the case," *Brown v. American Honda (In re New Motor Vehicles Canadian Export Antitrust Litig.)*, 522 F.3d 6, 34 (1st Cir. 2008) (quoting *Amchem*, 521 U.S. at 615), to determine whether "the rigorous Rule 23(b)(3) requirements" are met, *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 554 (5th Cir. 2003).  *See also Gunnells v. Healthplan Servs.*, 348 F.3d 417, 468 (4th Cir. 2003).

The Eighth Circuit has held, "[I]f, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question" and common questions do not predominate over individualized issues.  *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).  Here, the putative class epitomizes a situation where it will need to present evidence that varies from member to member.  Indeed, in his recommendation, the Magistrate Judge mentioned numerous undisputed facts that demonstrated questions of liability will vary significantly by department, supervisor, job code, and employee.  *See* R&R at 3-4.

The determination of whether Defendant is liable to any particular employee will turn on particularized inquiries: (1) what the employee was required to wear, (2) when and where it was donned or doffed, (3) what effort and time it took, and (4) whether and how gang-time pay was supplemented.  Such *uncommon* issues of fact and law predominate over the broadly defined basis for commonality on which the Magistrate Judge has based his recommendation.

In addition, in determining whether a class action is "superior" to other methods of adjudication, a court must "focus on the efficiency and economy elements of the class action," *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001), considering "the difficulties likely to be encountered in the management of a class action," *Beattie v. CenturyTel,*

*Inc.*, 511 F.3d 554, 567 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(b)(3)).  *See also Telco Group*

*Inc. v. Ameritrade, Inc.*, 8:05cv387, 2006 U.S. Dist. LEXIS 83475 (D. Neb. Nov. 6, 2006);

*Evans v. Am. Credit Sys.*, 222 F.R.D. 388, 396 (D. Neb. 2004).  Because the clothing

requirements and pay practices vary so substantially across the proposed class and are critical to

stating a claim, litigating these claims as a class action will be inefficient and unmanageable.

Certifying such a class would result in varied individual trials to determine liability.

Such divided litigation is precisely what the Rule 23(b)(3) factors are designed to

prevent.  "Having to engage in separate threshold inquiries for each class member prior to

reaching the common issues does not promote such economy. . . . [It] will create judicial

diseconomy."  *Telco Group*, 2006 U.S. Dist. LEXIS 83475, at *31 (quoting *Estate of Mahoney v.*

*R.J. Reynolds Tobacco Co.,* 204 F.R.D. 150, 161 (S.D. Iowa 2001); *see also Zinser*, 253 F.3d at

1192.  Because "the complexities of class action treatment outweigh the benefits of considering

common issues in one trial, class action status is not the 'superior' method of adjudication . . ."

*Zinser*, 253 F.3d at 1192.  Thus, the Court should not adopt the Magistrate Judge's

recommendation that it certify a class based, in part, on Plaintiffs having met the requirements of

Rule 23(b)(3).  *See Little Caesar Enters. v. Smith*, 895 F. Supp. 884, 902-07 ( E.D. Mich. 1995)

(partially rejecting magistrate judge's recommendation for certification of several different

classes under Rule 26(b)(3) because the individual issues that would have predominated in one

class also prohibited the use of multiple smaller classes).

## VI.    CLASS CERTIFICATION IS INAPPROPRIATE IN AN ACTION THAT RAISES FLSA CLAIMS

The Rule 23 class action mechanism is fundamentally incompatible with the FLSA's

collective action procedure.  Congress established an "opt-in" scheme for FLSA collective

actions, which ensures that no individual will have his or her right to a lawful wage resolved

without affirmatively opting in.  *See* 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Congress adopted the opt-in procedure to strike a balance between employee enforcement and protecting employers by both "limit[ing] private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

Rule 23 takes the opposite tack, establishing an "opt-out" scheme that binds unnamed parties unless they affirmatively opt out of the litigation.  Like numerous other courts, the Eighth Circuit has recognized that "[t]here is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)." *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975) (quoting *La Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975)) (emphasis omitted); *King v. W. Corp.*, No. 8:04CV318, 2006 U.S. Dist. LEXIS 3926, at **47-48 (D. Neb. Jan. 13, 2006) (same); *Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122, 127 (D. Conn. 2005) (same); *Robinson v. Sizes Unlimited, Inc.*, 685 F. Supp. 442, 445 n.7 (D.N.J. 1988) (same); *Ramsey v. Ryan Beck & Co.*, No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007) (same); *Herring v. Hewitt Assocs., Inc.*, Civ. No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (same).

Moreover, recent decisions have held that "the incompatibility between Rule 23 and Section 216 [of the FLSA] precludes a finding of superiority with regard to … state wage claims." *Ervin v. OS Rest. Servs.*, Inc., No. 08C1091, 2009 U.S. Dist. LEXIS 56062, at *7 (N.D. Ill. July 1, 2009); *see also Riddle v. Nat'l Sec. Agency, Inc.*, No. 05C5880, 2007 U.S. Dist. LEXIS 68842, at **8-9 (N.D. Ill. Sept. 13, 2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D.

462, 469-70 (N.D. Cali. 2004); *Hasken v. City of Louisville*, 213 F.R.D. 280, 284 (W.D. Ky. 2003). In denying Rule 23 class certification, courts have relied on the conflicting opt-in versus opt-out procedural mechanisms for joining class members and have focused on Congress's intent in creating the opt-in procedure for federal court to "limit[] private FLSA plaintiffs to employees who asserted claims in their own right and free[] employers from the burden of representative actions." *Riddle*, No. 05 C 5880, 2007 U.S. Dist. LEXIS 68842, at **9-10; *see also Ervin*, 2009 U.S. Dist. LEXIS 56062, at *4.

Here, the Plaintiffs seek to circumvent Congress's intent for wage and hour claims in federal court to be "opt-in actions." *Indeed, despite pleading FLSA claims in their Complaint, Plaintiffs have chosen not to pursue certification under the FLSA.* Instead, and in stark opposition to Congressional intent, Plaintiffs seek to force potentially thousands of individuals who have not affirmatively chosen to litigate, and who may have differing interests from their own, into this case through their state law claims. The Magistrate Judge's recommendation permits Plaintiffs to circumvent the FLSA's opt-in requirement by utilizing the completely different Rule 23 process; this is improper, particularly where the named plaintiffs are not adequate representatives of the class and where most of the potential class members have not shown any interest in joining this lawsuit.[6] *Ervin*, 2009 U.S. Dist. LEXIS 56062, at *6 (citing Riddle, 2007 U.S. Dist. LEXIS 68442, at *3).

## CONCLUSION

---

[6] Only approximately 55 current and former employees have filed consents to join as potential plaintiffs in the nonexistent FLSA class. Unger ¶ 8.

For the foregoing reasons, this Court should not adopt the report and recommendation of the Magistrate Judge and should deny Plaintiffs' request for certification of a class action under Fed. R. Civ. P. 23.

Dated this 22nd day of December, 2010.

Tyson Foods, Inc., DEFENDANT

Steven D. Davidson
Allison D. Balus
of BAIRD HOLM LLP
1500 Woodmen Tower
Omaha, NE 68102-2068
Phone: 402-344-0500

and

By:  s/Michael J. Mueller
Michael J. Mueller (*pro hac vice*)
Evangeline C. Paschal (*pro hac vice*)
HUNTON & WILLIAMS LLP
1900 K. Street, N.W.
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

     Brian McCafferty, Esq.

     Todd Bennett, Esq.

     Jairus Gilden, Esq.

     Michael Hamilton, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

     None.

                          s/Michael J. Mueller